RUSHTON *v.* THOMPSON *et al.*

(*Circuit Court, D. Nebraska.* June 30, 1888.)

SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—MISTAKE.

> Plaintiff made an offer to defendant's agent, with power to sell for cash, to buy land at a certain price, part cash, and the balance in short payments, on the making of a perfect title. The agent telegraphed the offer to the owner, without stating as to title, and he replied, accepting it. The land was at the time leased for a year, and the owner had no patent therefor, but only a final receiver's certificate, having taken it up under the timber culture act, all of which was known to defendant's agent. Plaintiff refused to accept the title, but tendered the cash payment according to his offer, and on its refusal deposited it in bank. Defendant's agent also tendered back to plaintiff the check he had deposited as a forfeit when making his offer, and told him he need not take the land. *Held,* that there was an evident misunderstanding as to title, and that the contract should equitably have been abandoned when it was first discovered; and the fact of plaintiff's deposit in bank, and loss of the use of the money, does not increase his equities, and as the issue of the patent is indefinite, and greater loss and inconvenience would result to defendant from enforcing the contract than to plaintiff by its abandonment, specific performance will not be decreed.[1]

In Equity. Bill for specific performance.
*Batty & Casto* and *Robert Ryan,* for plaintiff.
*J. M. Ragan,* and *J. M. Woolworth,* for defendants.

BREWER, J. This is a bill filed by the plaintiff to enforce the specific performance of a contract for the sale of real estate. The facts are these: Defendant Edward Thompson in the summer of 1886 made final proof in the United States land-office, under the timber culture act, and received a final receiver's receipt. Thereafter he removed to California. One

---

[1] Specific performance of a contract will not be decreed, when for any reason it would be inequitable. See Eaton v. Eaton, (N. H.) 14 Atl. Rep. 867, and cases cited in note; Byars v. Stubbs, (Ala.) 4 South. Rep. 755, and note.

George F. Work, who resided in Hastings, was a real-estate broker, and was familiar with Thompson's property and title.   Shortly after moving to California, Thompson, concluding to make some investments there, wrote to Work to sell the land for $10,000 cash.   Work was a member of the firm of Dugan & Work, the firm consisting of George F. Work, A. L. Work, and Dugan, though this fact was unknown to defendant. On January 13, 1887; plaintiff submitted to Dugan & Work a proposition for the purchase of this land, as follows:

"I will give Edward Thompson for the north-west quarter of section 14— 7—10, Adams county, Neb., 10,000 dollars as follows, $2,500.00 on making of papers; $2,500.00 in 60 days from 'that date; $5,000.00 in 90 days from that date, and the making of a perfect title by the owner.   If these conditions are performed by the owner, and I fail to take the land, the $200.00 this day deposited shall be forfeited and paid to the owner of the land, or his order.
    [Signed]                                                "J. H. RUSHTON."

Immediately a telegram was sent to defendant in these words:

"*Edward Thompson, Los Angeles, Cal.*   Am offered ten thousand dollars for farm; twenty-five hundred cash, twenty-five hundred in sixty days, five thousand in ninety days.   Shall we sell?   Answer.
    [Signed]                                          "GEORGE F. WORK. Per D."

To which he replied as follows:

"JANUARY 13, 1887. · Dated, Los Angeles, Cal., 13.   *To George F. Work, City:*   All right.   Draw papers, and send me immediately for signature.
    [Signed]                                               "EDWARD THOMPSON."

A deed was prepared with full covenants of warranty, and forwarded to the defendant for execution, and returned by him immediately to George F. Work, together with the receiver's final receipt, and a lease, which he had given on the land for a year, duly assigned.   On the receipt of these papers the plaintiff called at the office of Dugan & Work, and, finding that no patent had issued, and that the only title held by the defendant was that evidenced by the receipt, and also the existence of this lease for a year, declined to complete his purchase unless the title was perfected by the patent and by the removal of the leasehold interest.   He made a tender of the $2,300 necessary to complete the first payment, as well as the notes and mortgage to secure the balance, and demanded full performance of the contract.   On the other hand, Dugan & Work, finding that the plaintiff was unwilling to accept title as it stood and complete his payment, tendered back the check which had been left with them, and demanded a return of the receipt which they had given.   It appears also that the defendant's object in selling was to realize some money to complete a proposed purchase of property in California, and therefore cash, or its equivalent, was a matter of urgency with him.   Also that the plaintiff was offered, in the letter announcing the arrival of the papers, $12,000 for the land, and told that the "boom" was still on.   It seems to be assumed by plaintiff that, if a valid and binding contract was created between himself and defendant, equity will,· as a matter of course, decree a specific performance; but this is far from true.   The law will always award damages for breach of a contract, and

that, generally, in transactions concerning personal property, is the only remedy afforded. Equity will take hold of contracts for the sale of real property, and will enforce them specifically, but only when, under all the circumstances of the case, and considering the relative situation of the parties, it is equitable that it should do so. Now, this defendant had given no authority to any one but George F. Work. George F. Work knew the exact state of his title, and he had a right to presume, when notified by the telegram of the offer made, that it contemplated the purchase of the land under the title, and in accordance with the title that he held. He had had dealings with the land department at Washington theretofore; knew that often there was delay in the issue of a patent; and, urgent for money, it is not to be supposed that he would approve a contract of sale with the idea that that contract was to remain unperformed for an indefinite time in the future, and to be dependent upon the perhaps distant issue of the patent. There was an obvious misunderstanding between the parties. He promptly offered to surrender everything that he had from the plaintiff; told him that he need not take the property. It may be true, as plaintiff says, that the misunderstanding was wholly on the other side,—a matter between the defendant and his agent. It may be true that the contract was valid and binding; that the law presumes, in the absence of stipulations to the contrary, that a perfect title is intended, and that the defendant was charged with notice; and especially that when the warranty deed was sent to him for execution he was bound to know that a perfect and legal title was intended to be conveyed. But notwithstanding all this, the fact remains that there was a misunderstanding by the defendant in respect to the matter; and to enforce a specific performance under these circumstances might carry out the strict rules of the law, but would not be responsive to the dictates of equity. It would enforce the letter, but it would sacrifice the spirit. It is well to look a little further into the equities of these parties; and to determine their real equities we must have regard to the situation as it was when the lack of a patent was first discovered by the plaintiff, and before he made the tender. What would either party have suffered, if the contract had been then abandoned? It is needless to inquire as to the present situation, for if it was inequitable to insist upon the contract at the very moment that the misunderstanding was discovered, then the plaintiff cannot increase his equities by doing an inequitable thing. If, at the time of the discovery of this misunderstanding, he ought equitably to have abandoned the whole matter, it will not do for him now to say that he then placed money in the bank, and has consequently lost the benefit of that money ever since. Now, at the time plaintiff had paid nothing. True, he had given his check for $200, but not a dollar had been drawn upon it. If, in the absence of testimony to the contrary, it may be presumed that he left the money in the bank, which otherwise he might have withdrawn and used, then all that he had lost was the use of that $200 for the two or three weeks pending the negotiations. On the other hand, the defendant, if held to his contract specifically, would find (as he has found) his property tied

up for months; possibly lose his investment in California, and forego the chances of a sale to some other party, who might not be so particular about the legal title. Certainly the injury to the defendant by insisting upon the contract was vastly more than the loss to the plaintiff by its abandonment. And again, defendant has not yet received his patent; nevertheless, plaintiff is asking a decree for a specific performance. In other words, he is asking this court to compel a conveyance of the very title which, when offered, he declined to receive. True, he asks that this court retain jurisdiction of the case and of the defendant until such time as the patent shall be issued, and that in the mean time he himself be relieved from the obligation to pay; in fact, the bill has a twofold aspect,—one to compel performance by defendant, and the other to delay payment by the plaintiff. Again, as a general rule it may be observed, in cases of this kind, a leading inquiry is as to who is seeking to avoid the contract. It may happen that a vendor under such a contract, seeing a chance to realize more on another sale, or believing in the rapid increase of value, seeks some technical excuse to avoid complying with his contract. When that is apparent, and the purchaser has acted in good faith, the court will readily enforce specific. performance. It will punish the wrong-doer by compelling him to do that which he agreed to do. On the other hand, when the vendor is acting in good faith, is ready to perform that which he understood he had agreed to perform, to transfer all the title that he has, and the purchaser is the one who is making excuses, and seeks without present payment to hold his claim upon the property, then the courts will be very apt to say to him to pursue his remedy by an action at law, and let go his hold upon the property. Finally, it may be observed that in matters of this kind courts not merely observe the words of the contract, but also have respect to the obligations of the golden rule, and that, unless a plaintiff has done as he would be done by, it is useless for him to come into that forum where equity and good conscience reign supreme over the letter of the law. A decree will be entered dismissing the bill.