MARY H. RUPERT ET AL. V. PETER PENNER ET AL.

[FILED NOVEMBER 2, 1892.]

1. **Ejectment**: ADMISSION OF EVIDENCE : DISCRETION OF TRIAL
COURT.   Permitting the introduction in evidence of records of
deeds duly recorded, for the purpose of proving title to real estate
in an action in ejectment, instead of requiring the production of
the original deeds, rests largely in the discretion of the trial
court, and its ruling thereon will be regarded as conclusive un-
less there has been an abuse of discretion.

2. ———: ———: SUFFICIENCY OF OBJECTION.   The admission of
a deed in evidence was objected to at the time by the adverse
party as incompetent, immaterial, and irrelevant.   *Held*, That
the objection was not specific enough to reach defects in the exe-
cution of the instrument, as that it was not witnessed.

3. **Evidence**: OBJECTIONS: WAIVER.   Ordinarily objections to the
admission of testimony not made when offered are waived and
cannot be urged for the first time on appeal to this court.

4. **Deed**: DESCRIPTION OF REAL ESTATE.   Real estate is suffi-
ciently described in a conveyance when the deed refers for iden-
tification to another deed specifically mentioned therein, which
contains an accurate description of the property sold.

5. ———: IDENTITY OF GRANTOR.   In the body of a deed and in
the certificate of acknowledgment the grantor was correctly
described as Archibald T. Finn.   The deed was signed as Arch.
T. Finn.   The certificate of acknowledgment identified the
party mentioned as grantor as known to the officer to be the per-
son whose name is affixed to the instrument and who executed
the same.   *Held*, That it sufficiently appeared that "Archibald
T." and "Arch. T." were one and the same person.

6. ———: IDENTITY OF THE NAME of a grantor or grantee is *prima
facie* evidence of identity of the person.

7. **Conveyance of Real Estate**: CONSTRUCTION OF INSTRU-
MENT.   Under the provisions of section 53, chapter 73, Compiled
Statutes, in construing an instrument conveying real estate,
when by any reasonable interpretation the granting clause and
the *habendum* can be reconciled, effect must be given both.

8. ———: ———.   The premises of a deed were, " do hereby grant, sell
and convey unto J. P. C."   The *habendum* clause was " to have

and to hold said premises with the appurtenances unto the said J. P. C. for and during the term of his natural life, and at his decease the same shall descend in equal shares to his children," naming them. *Held*, That the deed conveyed a life estate to J. P. C. with remainder to his children therein mentioned.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*Savage, Morris & Davis*, for plaintiffs in error.

*Mahoney, Minahan & Smyth*, contra.

NORVAL, J.

This is a suit in ejectment brought in the court below by Mary H. Rupert, Sarah A. Burchmore, Thomas B. Cleveland, Sophia Cleveland, John B. Cleveland, Clara H. Cleveland, Grace M. Cleveland, and Grant W. Cleveland, the plaintiffs in error, to recover certain real estate situated in the city of Omaha.

A jury was selected to try the cause, but, after the testimony was closed, by agreement of parties the question of title was submitted to the court, who found for the defendants, and judgment was entered dismissing the action.

Plaintiffs claim title from the United States through numerous conveyances, the following being their chain of title to the premises: United States to Preston Reeves, patent, dated May 1, 1860, recorded January 5, 1861; Preston Reeves and wife to Jesse Lowe, mayor of the city of Omaha, warranty deed, dated October 31, 1857, recorded November 2, 1857; Jesse Lowe, mayor, etc., to Thomas B. Cuming, deed, conveying the undivided one-half of the premises, dated October 31, 1857, recorded November 2, 1857; Charlotte Cuming, widow of Frank H. Cuming, deceased, May Cuming, Francis Cuming, Anne Cuming, Emily Cuming, and Caroline Large, sisters of said Thomas B. Cuming, to Margaretta C. Cuming, quitclaim deed,

dated August 22, 1864, recorded December 2, 1864; Jesse Lowe, mayor, etc., to Archibald T. Finn and Charles Bridge, deed to undivided one-half, dated October 31, 1857, recorded · November 2, 1857; Charles Bridge to Archibald T. Finn, deed, dated April 29, 1861, recorded May 14, 1861; Margaretta C. Cuming to George Armstrong, deed, dated December 1, 1864, recorded December 2, 1864; Archibald T. Finn to George Armstrong, deed, dated September 27, 1862, recorded December 6, 1864; George Armstrong to Mason L. Derwin, deed, dated September 19, 1872, recorded same date; Mason L. Derwin to Moses Hotaling, warranty deed, dated December 14, 1867, recorded December 20, 1867; warranty deed from Moses Hotaling and Ellen M., his wife, to John P. Cleveland for life, with remainder to his children, the plaintiffs herein, bearing date September 13, 1877, and filed for record the next day.

It appears from the evidence that said John P. Cleveland died in 1886, and that Mary H. Cleveland and Sarah A. Cleveland, mentioned in the deed last referred to, have since married, the former to Louis Rupert, and the latter to one Burchmore.

The record shows that John P. Cleveland and wife mortgaged the premises sought to be recovered in this action on the 8th day of January, 1880, to Charles C. Housel to secure the payment of $150; that subsequently said mortgage was foreclosed, the property sold under the decree to said Housel, and, by direction of the court, Wallace R. Bartlett, as special master commissioner, executed a deed to Housel covering said premises. On the 5th day of November, 1883, said Charles C. Housel, with his wife, Myra J., executed and delivered a warranty deed of the property to the defendant, Peter Penner, which was duly placed upon record.

Numerous objections are urged by defendants to certain deeds in plaintiffs' chain of title, and defendants further in-

sist that the deed of Moses Hotaling and wife conveyed the fee to John P. Cleveland, instead of a life estate to him, with remainder to plaintiffs.

The plaintiffs, for the purpose of showing the devolution of title, introduced in evidence, over defendants' objections, record copies of the deeds, instead of the originals. Defendants contend with much earnestness that the proper foundation for the introduction of secondary evidence of the conveyances was not laid, and, although the records were admitted, the trial court ought to have excluded the same in reaching a conclusion, and therefore it will be presumed to have done so.

Section 13 of chapter 73 of the Compiled Statutes of 1891, among other things, provides that "the record of a deed duly recorded, or a transcript thereof duly certified, may also be read in evidence with the like force and effect as the original deed, whenever, by the party's oath or otherwise, the original is known to be lost, or not belonging to the party wishing to use the same, nor within his control."

It appears from the testimony of Mrs. Cleveland that she was the wife of John P. Cleveland and was residing with him at the time of his death ; that he kept his papers in his desk at his home, where she made diligent search for the deeds, but was unable to find either of them, and that none of the original deeds constituting plaintiffs' chain of title were in her possession or under her control.    True, Mrs. Cleveland is not a party plaintiff in her own right, yet she is the natural guardian of and appears and prosecutes the suit as the next friend for the minor plaintiffs.

In view of the statutory provisions and the construction placed thereon by this court, we are of the opinion that sufficient foundation was laid for the introduction of the record of conveyances.    The question of admitting in evidence records of deeds and other instruments duly recorded, instead of requiring the production of originals, rests largely in the discretion of the trial court.    There was no

abuse of discretion in this case in admitting secondary evidence. The deed to John P. Cleveland and the plaintiffs embraces only a portion of the lands described in the deeds to which objections are made; therefore, the record of such deeds was admissible in evidence without laying any foundation therefor, as there is no presumption that the originals were ever in plaintiffs' possession. (*Delaney v. Errickson*, 10 Neb., 492; *Hapgood Plow Co. v. Martin*, 16 Id., 27; *F., E. & M. V. R. Co. v. Marley*, 25 Id., 138; *Buck v. Gage*, 27 Id., 306.)

The point is made that the deed from Jesse Lowe, mayor, to Finn and Bridge was incompetent to show a transfer of title from the grantor to the grantees therein named, because the same is not witnessed; therefore it should not have been admitted by the trial court, and hence must now be disregarded. A sufficient answer to this contention is that no such objection was urged in the court below. The record shows that when the deed, or rather the record thereof, was offered in evidence the defendants objected to its introduction, as being incompetent, immaterial, and irrelevant. This objection is too general to reach the defect now insisted upon. (*Gregory v. Langdon*, 11 Neb., 166.) Had the ground of the defendants' objection to the deed been that it was not witnessed, its admission in evidence would have been improper. While this is true, it by no means follows that, since the deed was admitted without such objection being made, the court would be justified in rejecting the same when it comes to weigh the testimony.

The cases of *Enyeart v. Davis*, 17 Neb., 228, and *Willard v. Foster*, 24 Id., 213, cited in brief of defendants, are inapplicable. No such a question as we are now considering was therein decided. These decisions affirm the doctrine, which has been repeatedly recognized and applied by this court, that error will not lie for the admission of irrelevant testimony in a cause tried to a court without a jury. The reason for the rule is well stated in *Willard v.*

*Foster*, thus: "The court must necessarily have an opportunity to examine each article of evidence offered, even for the purpose of rejecting it; and so the duty of acting and deciding the cause, upon the legal and relevant evidence selected from the mass that may have been introduced, may be as well discharged by the court upon the final consideration of the cause, as to pause in the course of trial to pass upon the admissibility of the several matters offered in evidence." In causes tried without the intervention of a jury, the court must base its decision solely upon the material and relevant testimony, and as the court is presumed to have considered none other, the admission of irrelevant testimony could not prejudice the party complaining of its introduction. But neither of the cases cited by counsel is authority for holding that a court, after admitting relevant and material testimony, may disregard the same because it was inadmissible, for the reason no foundation had been laid, or because of some other ground which properly might have been made, but which was not urged. No good reason has been suggested why the rule for which defendants contend should be adopted. It certainly would not aid in the administration of justice. Under such a rule, objections to testimony would be unnecessary, but the court would be compelled to regard all objections which could properly be made, but which were not insisted upon when the testimony was received. Ordinarily, in a case tried to a jury, objections not made to testimony when offered are waived, and we think the same rule should obtain where the trial is to the court.

The deed from Reeves to Lowe shows that the conveyance was made to the grantee as mayor of Omaha, and to his successors in office, in trust to convey the tract therein described, which includes the premises involved in this lawsuit, to the several owners and occupants. It is objected that it is not shown that Finn and Bridge were beneficiaries under the trust, therefore the deed from Lowe to them

was not competent. The legal presumption, in the absence of any evidence upon the subject, is that Finn and Bridge were entitled to the deed under the terms of the trust, and that the trust was properly executed. (*Tecumseh Town Site Case*, 3 Neb., 267.)

It is urged that the deed from Bridge to Finn is void for want of certainty in the description therein contained, which reads: "All and singular that certain piece or parcel of land situated and being within the corporate limits of the city of Omaha, in the county of Douglas, and territory of Nebraska, it being an undivided quarter section, number sixteen (16), known and designated on Byers' map of the city of Omaha as Bridge and Cummings tract, the said land is the same as conveyed by deed to Archibald T. Finn and Charles Bridge, now on record in the recorder's office in the city of Omaha, containing forty acres, more or less." The precise quarter of section 16 intended to be conveyed is not stated, nor is the township and range mentioned; therefore the description is so defective and imperfect that nothing passed by that alone; yet the location of the property is definitely fixed and made certain by that part of the deed which refers to Byers' map of the city of Omaha and to the deed to Finn and Bridge. The deed from Bridge to Finn identifies the property as being the same as is designated in the Byers map as Bridge and Cummings tract, and as the same land conveyed by the deed to Archibald T. Finn and Charles Bridge, then on record, in which the property is described as the " undivided one-half of the southeast quarter of section sixteen (16), in township number fifteen (15) north, of range thirteen east, of the 6th principal meridian." Taking these two deeds together there is no uncertainty as to the property intended to be conveyed. (*Caldwell v. Center*, 30 Cal., 539; *Coats v. Taft*, 12 Wis., 389*; *Newman v. Tymeson*, 13 Wis., 172; *Nelson v. Broadhack*, 44 Mo., 596.)

But even if the property was not sufficiently identified,

41

the judgment could not stand.  Independent of the conveyance from Bridge to Finn, the latter was the owner of the undivided fourth of the tract in dispute by virtue of the deed from Lowe to Finn and Bridge, and if plaintiffs only obtained title to the undivided one-fourth, they would still be entitled to maintain the action.

It is insisted that the record does not show that Archibald T. Finn has ever parted with his title.  This contention is based upon the fact that in the body of the deed from Finn to George Armstrong, the grantor is designated as Archibald T. Finn, while the signature to the conveyance is Arch. T. Finn.  In the certificate of acknowledgment the name of the grantor is written the same as in the body of the deed, the officer taking the acknowledgment certifying that "personally came Archibald T. Finn, personally to me known to be the identical person whose name is affixed to the above deed as grantor, and acknowledged the instrument to be his voluntary act and deed."  This was sufficient to show that the grantor described in the deed and the person who signed and acknowledged the instrument were one and the same person.  It is obvious that Arch. was intended as an abbreviation of Archibald, therefore there is no contradiction between the certificate of acknowledgment and the deed.  It frequently occurs in transferring lands that the grantor in making a deed signs either his initials or the abbreviation of his given name, although the Christian name is stated in full, both in the body of the deed and in the certificate of acknowledgment, yet the instrument would not be inadmissible in evidence for that reason alone, where from an examination thereof it clearly appears that the same was signed and acknowledged by the grantor.  This doctrine is well supported by the adjudicated cases.

In *Lyon v. Kain,* 36 Ill., 362, the grantors were correctly described in the body of the conveyance and in the acknowledgment as Samuel B. Postley and Abraham

B. Kain, while the deed was signed "S. Brook Postley" and "A. Boudoin Kain." It was held that as the officer taking the acknowledgment certified that he knew them to be the identical persons named in the deed as makers thereof, the identity of the grantors with the persons signing was sufficiently established to entitle the instrument to be received in evidence without other proof. Walker, C. J., in delivering the opinion of the court, observes: "When it is remembered that the law requires the officer to be personally acquainted with the grantor, or to have his identity proved, before he receives the acknowledgment, we can perceive no irregularity in the execution of this conveyance. The identity of the grantor, and not the person who merely signs the deed, must be established before the officer can act. His identity is a fact that the officer must know, or have proved, before he is authorized to grant his certificate, and when he has found and certified that fact, it is binding until rebutted. There is no evidence in this record attacking the truth of these certificates, and they must in this particular be held sufficient. The party executing any instrument may adopt any name, and he will be bound by its execution. If not his real name, his identity with the execution must be proved, and we think it has been done in this case."

In *Grand Tower Mfg. Co. v. Gill*, 111 Ill., 541, one of the grantors was named in the body of the conveyance as well as in the certificate of acknowledgment as "Robert P. McClintock," but the deed was signed "R. Parker McClintock." It was ruled that as the certificate of acknowledgment showed that Robert P. McClintock acknowledged the instrument, it sufficiently appeared that "Robert P." and "R. Parker" were the same person and that the instrument was properly received in evidence. In this connection we also refer to the following cases cited in the brief of plaintiffs: *Fenton v. Perkins*, 3 Mo., 106; *Houx v. Batteen*, 68 Id., 87; *Middleton v. Findla*, 25 Cal., 76.

None of the cases cited in brief of defendants conflict with the proposition above stated. The one nearest holding a contrary doctrine is *Boothroyd v. Engles*, 23 Mich., 21; but a cursory examination shows that it is not really an authority on the question under consideration. In that case Hiram Sherman was named as grantor in the body of the deed and in the acknowledgment, while the instrument was signed Harmon Sherman. It was held that the defect was not supplied by the certificate of acknowledgment and the deed was excluded. Hiram and Harmon are not similar, nor is one the abbreviation of the other. The decision therefore is not in point.

. Another case cited by defendants is *Burford v. McCue*, 53 Pa. St., 431. There R. P. O'Neill was described as grantor in the deed, and the acknowledgment and conveyance were so signed. It was ruled that the deed was not admissible in evidence to show a conveyance from Patrick O'Neill without evidence of identity, and that without such proof it would not be presumed that R. P. O'Neill stood for Rev. Patrick O'Neill. In the case at bar the certificate of the officer who took the acknowledgment, established that the grantor described in the deed is the same person who signed and acknowledged the same. Parol proof of identity was therefore unnecessary.

We have no doubt that the deed from Finn to George Armstrong vested in the latter the title to the undivided one-half of the property in dispute. As to the other undivided one-half, the record shows that it was conveyed by Jesse Lowe, mayor, to one Thomas B. Cuming; that said Thomas B. Cuming died in February or March, 1858, intestate without issue, leaving him surviving, his widow, Margaretta C. Cuming, his father, Frank H. Cuming, and his sisters, Mrs. Large, Mary Cuming, Charlotte Cuming, Frank Cuming, Emily Cuming, and Anna Cuming. It is conceded that, under the law of descent in force at the time of the death of Thomas

B. Cuming, his undivided one-half of the real estate descended to his widow, Margaretta C. Cuming, for life, with remainder to his father, Frank H. The record discloses that the said Frank H. died in 1862, and that his widow and children on the 22d day of August, 1864, executed the deed to said Margaretta C. Cuming, to which reference has been made. The widow of Thomas B. Cuming not only acquired by descent a life estate in the property, but also the remainder by purchase, if the above mentioned deed bearing date August 22, 1864, conveyed to the grantee therein the interest which descended to the father of Thomas B. Cuming. Numerous objections are urged against this deed, but in our view it is not important for the purpose of this hearing that we should stop and determine whether the same are well founded or not, for it is conceded by both parties that Margaretta C. Cuming, the widow of Thomas B. Cuming, deceased, who owned a half interest in the property at the time of his death, is still living, and as the property went to her during her life, she is still entitled to possession unless she has conveyed her interest, in which case, the person owning such interest is entitled to possession while she lives.

But it is urged by defendants that there is no evidence that Margaretta C. Cuming has parted with her interest. This contention is not borne out by the record, for, as already stated, Margaretta C. Cuming conveyed the property on December 1, 1864, to George Armstrong. A similar objection is urged against this conveyance as was made to the deed from Finn to Armstrong, which we have already discussed; and for the reasons there stated the objection to the validity of this deed must be overruled. It is signed M. C. Cuming, but in the body of the deed and the acknowledgment the grantee and the person executing the instrument is described as Margaretta C. Cuming. This was sufficient *prima facie* to establish that M. C. and

Margaretta C. are one and the same, and there is no evidence in the record·to the contrary.

It is said there is nothing in the deed to identify the grantor with Margaretta C. Cuming, the widow of Thomas B. Cuming. The failure to recite such fact in the deed does not invalidate the conveyance. Identity of the name is sufficient to make a *prima facie* case of identity of the person. (2 Phillips, Ev., 508; Maxwell, Pl. & Pr., 612; *Aultman v. Timm*, 93 Ind., 158; *Stebbins v. Duncan*, 108 U. S., 47; *Douglas v. Dakin*, 46 Cal., 49; *Flournoy v. Warden*, 17 Mo., 436.) It follows that the life estate of the widow of Thomas B. Cuming vested in George Armstrong, who conveyed the same, with the half interest obtained from Finn; to Mason L. Derwin, and from him the title passed down through Moses Hotaling to John P. Cleveland or the plaintiffs. If the latter acquired such title under· said deed, then they are entitled to the possession of the premises. The determination of this question necessitates a construction of the following provisions of the deed executed by Hotaling and wife:

"Know all men by these presents, that we, Moses Hotaling and Ellen M.,· his wife, of Washington county, Neb., for the consideration of one hundred dollars, in hand paid, do hereby grant; sell, and convey unto John P. Cleveland, of· Omaha, Nebraska, the following described real estate in the county of Douglas, state of Nebraska, and bounded and described as follows:

.*      ·*      *      .·      *      .*      *

"Together with all the hereditaments and appurtenances to the same belonging. To have and to hold said premises, with the appurtenances, unto the said John P. Cleveland for and during the term of his natural life, and at his decease the same shall descend in equal shares to his children, Mary H. Cleveland, Sarah A. Cleveland, Thomas B. Cleveland, Sophia Cleveland, John F. Cleveland, Clara H. Cleveland, Grace M. Cleveland, and Grant W. Cleve-

Rupert v. Penner.

land, and to their heirs and assigns. And I, the said Moses Hotaling, for myself and my heirs, executors, and administrators, do hereby covenant with the said John P. Cleveland and his heirs and assigns that I am lawfully seized of said premises; that they are free from incumbrance, except the taxes aforesaid ; that I have good right to sell the same, and that I will, and my heirs, executors, and administrators shall, warrant and defend the same against the lawful claims and demands of all persons whomsoever."

The defendants contend the above deed conveyed to John P. Cleveland an estate in fee-simple, while plaintiffs, on the contrary, insist that he took only a life estate with remainder to his children named in the deed, who are the plaintiffs herein. If it were not for the limitation contained in the *habendum* clause, the contention of defendants would be unanswerable, for under our statute the use of the word heirs in a deed is not indispensable to the conveyance of a fee. In this respect the legislature has changed the common law rule. Where no estate is expressly mentioned in the granting clause or premises of a deed it will be presumed that all the interest of the grantor passed by the conveyance, unless a contrary intent is clearly manifest from the language of the entire instrument.

Counsel for defendants claim that the *habendum* contradicts the granting clause, and they invoke the familiar doctrine that when the *habendum* in a deed is repugnant to the limitations appearing in the premises, it will not control the terms of the premises. We do not think this rule is applicable to the construction of the instrument under consideration, for the reason that the premises and the *habendum* are not contradictory. No definite estate is mentioned in the former, while the latter describes what estate in the property is conveyed. Such being the case, effect should be given to the limitations contained in the *habendum*. This is in harmony with the provision of section 53, chap-

ter 73, Compiled Statutes, which provides: "In the con-
struction of every instrument creating or conveying, or
authorizing or requiring the creation or conveyance of
any real estate, or interest therein, it shall be the duty of
the courts of justice to carry into effect the true interest (in-
tent) of the parties, so far as such intent can be collected
from the whole instrument, and so far as such intent is
consistent with the rules of law."

Under the above provision, in construing an instrument
conveying real estate, when by any reasonable interpreta-
tion the granting or conveying clause and the *habendum* can
be reconciled, effect must be given both. Applying this
rule to the construction of this deed it is manifest from the
language used that it was the intention of the grantor to
convey only a life estate to John P. Cleveland. Argument
could not make it plainer. Why specify that John P.
Cleveland should have and hold the premises for and dur-
ing the term of his natural life, "and at his decease the
same shall descend in equal shares to his children," naming
them, if it was the intention of the parties that he should
take an estate in fee-simple? Clearly the purpose in using
this language was to limit the estate conveyed to Mr.
Cleveland to a life estate.

A case precisely in point, decided under a statute simi-
lar to ours, is *Riggin v. Lwe*, 72 Ill., 553, in which
the conveyancing clause of the deed granted, bargained,
sold, and conveyed to Eliza McGilton certain described
real estate. The *habendum* clause, "to have and to hold
the said above granted premises to the said Eliza McGilton
during her natural life, and at her death the same is by
these presents conveyed and confirmed absolutely unto her
husband, Andrew McGilton;   *   *   *   and in case
of the death of him, the said husband, Andrew McGil-
ton, before that of her, the said Eliza McGilton, then by
these presents the said afore described real estate is conveyed
and confirmed absolutely unto the heirs at law of him, the

said Andrew McGilton, subject only to the lawful claims of her, the said Eliza McGilton." It was held that there was no repugnancy between the granting clause and the *habendum,* and that the deed conveyed a life estate to Eliza McGilton, with remainder in fee-simple to Andrew McGilton. See the following cases cited in plaintiffs' brief: *Tyler v. Moore,* 17 Atl. Rep. [Pa.], 217; *Montgomery v. Sturdivant,* 14 Cal., 290; *Bodine v. Arthur,* 14 S. W. Rep. [Ky.], 904; *Bean v. Kenmuir,* 86 Mo., 666; *Watters v. Bredin,* 70 Pa. St., 237.

It is claimed that the word "children" used in the deed should be interpreted as a word of limitation and not a word of purchase; in other words, it should be construed to mean heirs, and, if so construed, Cleveland took a fee-simple title. While the word "children" is sometimes held to mean heirs, such a construction is not permissible here, for the reason that certain specified children of John P. Cleveland are named in the deed as the persons to whom the title should pass, thus clearly excluding the inference that it was the purpose of the parties that the property should go to the persons who might be his heirs at his death. We think the word "children," in the connection in which it is used, is merely descriptive, being employed for the purpose of identifying the particular persons named in the deed as remainder-men.

We think counsel for defendants attach too much importance to the word "deceased," mentioned in the *habendum* clause of the deed. To give the word, in the connection it is employed, its ordinary legal meaning would be to reject and disregard other parts of the sentence in which it is found, and ignore the intention of the parties as gathered from the entire instrument. We cannot believe it was used to denote that the children of John P. Cleveland were to take by inheritance and not as purchasers. Had such been the intention of the grantor, it is not reasonable to suppose the names of those who were to acquire the es-

tate on the death of John P. Cleveland, would have been mentioned, for at that time they might not be living, and other children might have been born to him after the making of the deed, who might be heirs at his death. (*Dennett v. Dennett*, 40 N. H., 498; *Ballentine v. Wood*, 42 N. J. Eq., 558; *Halstead v. Hall*, 60 Md., 213; *Hodges v. Fleetwood*, 102 N. Car., 122; *Tyler v. Moore*, 17 Atl. Rep. [Pa.], 216.)

Our conclusion is that only a life estate vested in John P. Cleveland, which passed by the mortgage foreclosure proceedings to Housel, and by conveyance from him to the defendant Penner. This brings us to the consideration of the question whether or not the said John P. Cleveland is dead. If alive, plaintiffs would not be entitled to the possession of the property until after his death. Mrs. S. S. Cleveland, who was sworn on the part of the plaintiffs, testified on that branch of the case as follows:

Q. You were the wife of John P. Cleveland, were you not?

A. Yes, sir.

Q. Is he living?

A. No, sir.

Q. When did he die?

A. Three years ago.

Q. Where did he die?

A. At Kansas City.

Q. You were living with him at the time?

A. Yes, sir.

\*          \*          \*          \*          \*          \*          \*

Cross-examination :

Q. You say Mr. Cleveland died in 1886?

A. Yes, sir; three years ago.

\*          \*          \*          \*          \*          \*          \*

The witness further testified that plaintiffs are her children; that after the death of her husband she made an

ineffectual search in the place where he usually kept his papers for the deeds to the property in controversy.

The objection that the death of John P. Cleveland, who took the life estate, is not proven, is technical, and without merit. It is based upon the fact that in the question propounded to Mrs. Cleveland relating to her husband's death, the middle letter of his name is written "B." instead of "P." An examination of the bill of exceptions satisfies us that it is a clerical error of the official stenographer in taking down the testimony and transcribing his short-hand notes of the same. The transcript makes it appear that the plaintiffs introduced in evidence a deed from Hotaling to John B. Cleveland and a mortgage from John B. Cleveland to Housel. Yet an examination of the instruments referred to, copies of which are in the record, shows that in each the middle initial of Mr. Cleveland's name is written "P." To suggest that plaintiffs proved the death of a person who was never connected with the property in any manner and searched among his papers for the deeds in plaintiffs' chain of title is to reflect upon the intel'igence of their counsel without any just grounds therefor.

Lastly, it is contended that there is no proof that plaintiffs are the persons named in the deed from Hotaling to Cleveland as remainder-men. The undisputed testimony shows that the witness, Mrs. S. S. Cleveland, was the wife of John P. Cleveland, and that plaintiffs are his children. The names of all but two correspond exactly to the names mentioned in the deed, and these two, Mary H. and Sarah A., it is established beyond controversy, are sisters of the other plaintiffs, but, as already stated, are married, respectively, to Rupert and Burchmore. There is no evidence which in the least casts any suspicion upon the identity of the plaintiffs with the persons named in the deed as remainder-men, and the only conclusion we can draw from the testimony is that such identity is shown.

The judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.