MICHAEL O. MAUL ET AL. V. JOHN C. DREXEL, SHERIFF.

FILED JUNE 23, 1898.   No. 8132.

1. **Parties: SUBSTITUTION: EXCEPTION: REVIEW.** Where no exception is taken to an order substituting a party plaintiff, such order cannot be reviewed.

2. **Action on Official Bond: EVIDENCE.** In a suit on the official bond of a coroner the introduction in evidence of a copy of such bond is not prejudicial error, where the execution, delivery, and approval of said bond are admitted by the answer.

3. **Voluntary Assignment to Sheriff: SUCCESSOR IN OFFICE.** Where property is assigned to the sheriff and his successors in office in trust for the benefit of the creditors of the assignor, on the expiration of the term of the then sheriff the execution of the trust devolves upon his successor in office, in case the assignee chosen by the creditors fails to qualify and enter upon the duties of assignee.

4. ———: **DESCRIPTION OF PROPERTY.** A deed of assignment which

Maul v. Drexel.

describes the property conveyed with sufficient particularity to enable the same to be readily identified is not rendered void by the failure to attach to such deed a copy of the schedule of property referred to therein as being on file in the office of the county judge, and containing a more specific description.

5. ———: EXECUTION: EVIDENCE. An objection to the admission of a deed of assignment in evidence that it was not executed or acknowledged in the manner in which a conveyance is required to be executed and acknowledged is too general and not sufficiently specific to reach defects in the form of execution and acknowledgment of the instrument.

6. ———: REGISTRATION. An assignment of personal property for the benefit of creditors should be filed in the office of the county clerk of the county where the assignor resides within twenty-four hours after its execution, and is not void because not filed for record with the register of deeds within that period.

7. Evidence: ADMISSIONS. Admissions of a party against interest are receivable in evidence against him.

8. Sheriff: CONVERSION: INVENTORY: EVIDENCE. In an action against a sheriff or coroner for conversion of property seized by him under a writ of attachment the inventory and appraisement made and signed by such officer in the attachment proceedings are admissible in evidence against him on the question of the value of the property.

9. ———: ———: VALUE OF GOODS. And in such action of conversion the amount the officer received for the goods at the attachment sale is not a proper criterion for determining their value at the time of their conversion. The sum realized at such sale is an immaterial issue.

10. Voluntary Assignment: VALIDITY OF DEED: QUESTION OF LAW. Whether a deed of assignment is void for reasons which appear on its face is a question of law for the court, and not for the jury, to determine.

11. Market Value of Property. Market value is not what property is worth solely for the purpose for which it is devoted, but the highest price it will bring for any and all uses to which it is adapted, and for which it is available.

12. Instructions: HARMLESS ERROR. Error in an instruction is not available to a party where he was not prejudiced thereby.

ERROR from the district court of Douglas county. Tried below before BLAIR, J.  *Affirmed.*

*Bartlett, Baldrige & De Bord, C. P. Halligan,* and *Lee S. Estelle,* for plaintiffs in error.

*Winfield S. Strawn, contra.*

NORVAL, J.

On July 10, 1893, the firm of Rhoads & Sievers, of the city of Omaha, executed an assignment for the benefit of all its creditors to George A. Bennett, sheriff of Douglas county. The following is a copy of the deed of assignment:

"This indenture, made and executed at Omaha, the —— day of July, A. D. 1893, by and between Darius G. Rhoads and William Sievers, of the county of Douglas and the state of Nebraska, copartners doing business in the city of Omaha under the firm name and style of Rhoads & Sievers, parties of the first part, and George A. Bennett, sheriff of Douglas county, Nebraska, party of the second part,

"Witnesseth, that the said first parties, pursuant to the statute of the state of Nebraska in such case made and provided, and in consideration of $1 to them in hand paid, before the delivery of these presents, the receipt whereof is hereby acknowledged, and in consideration of the covenants and agreements hereinafter expressed, do hereby transfer, assign, set over, bargain, sell, and convey, give, grant, and release to the said George A. Bennett, sheriff as aforesaid, party of the second part, all such property of the said Rhoads & Sievers, copartners as aforesaid, whether the same be real or personal or mixed, and all our right, title, and interest in and to any and all property, both real and personal, and also the stock of goods now on hand located at, and known and described as follows, to-wit: All that part of lot one (1), five (5), and six (6), block two hundred and twenty-three (223), in said city of Omaha, lying and being south of a line drawn parallel to and fifty feet distance southerly from the center line of the main track of said Omaha & North Platte railroad, as now located over and across said block 223, in the city of Omaha, and all books of account of said Rhoads & Sievers, and all of our notes

and accounts or bills of exchange of whatever name or nature to the said partnership belonging, and all choses in action and claims against any and all persons, and more particularly described in the schedule prepared and this day filed in the office of the county judge of Douglas county, Nebraska, according to law; the leasehold interests of said parties in and to the real estate being known and described as follows, to-wit: All that part of lot one (1), five (5), and six (6), block two hundred and twenty-three (223), in said city of Omaha, lying and being south of a line drawn parallel to and fifty feet distance southerly from the center line of the main track of said Omaha & North Platte railroad as now located over and across said block 223, in the city of Omaha; to have and to hold the same under the said sheriff, George A. Bennett, and successor and successors who may be appointed by the county clerk of Douglas county, Nebraska, according to law, and their assigns, in trust, for the use and benefit of all the creditors of said copartnership of Rhoads & Sievers, as aforesaid, in proportion to the amount of their respective claim, the second party, and his successor or successors, in trust, to make an equal distribution of all such estate, whether real, personal, or mixed, among all such creditors, within the time and according to the terms prescribed by the laws of the state of Nebraska.

"And we, the said Rhoads & Sievers, do hereby constitute and make the said second party, and his successors, as assignee of our estate, our lawful attorney for ourselves as such copartners, and in our name, place, and stead and for the uses and purposes aforesaid, and to the use and benefit of the said creditors aforesaid, as they may be entitled to receive, and to collect all such funds as may be due and owing to us as such copartnership, whether upon notes or in any other way, and to receive and manage and dispose of all said property, real, personal, or mixed, and to distribute the same and the proceeds thereof among all our creditors, in propor-

tion to the amount of their respective debts, and giving and granting to our said attorney full power and lawful authority in and about the premises, and to use the due course and processes of law for accomplishing the same, and in our name make, seal, and execute due acquittance and discharges therefor, according to law, and under the orders and supervision of the county court of Douglas county, Nebraska.

"Witness our hands this 10th day of July, 1893.

"Rhoads & Sievers,

"By D. C. Rhoads and Wm. Sievers.

"Witness:

"Jas. W. Carr.

"State of Nebraska, } ss.
County of Douglas, }

"Be it remembered that on this —— day of July, A. D. 1893, personally appeared before me, a notary public, duly appointed, qualified, and acting as such, within and for the county aforesaid, Rhoads & Sievers, a co-partnership composed of Darius G. Rhoads and William Sievers, doing business under the firm name and style of Rhoads & Sievers, to me known to be the identical persons who subscribed the foregoing instrument and assignment, and acknowledged that they executed the same as copartners, and that as such the same was their voluntary act and deed for the uses and purposes therein set forth.

"Witness my hand and notarial seal this 10th day of July, A. D. 1893.

"[SEAL.]                           Jas. W. Carr,
                                    "Notary Public."

The assignment was delivered to the officer, or his deputy, who immediately took possession of the assigned estate, filed the deed of assignment for record in the office of the county clerk, and three days later the instrument was also recorded by the register of deeds. Subsequently, C. B. Havens & Co., a corporation creditor of said insolvent, commenced a suit against said Rhoads &

Sievers, aided by attachment, and Michael O. Maul, as
coroner, executed the writ by seizing all the assigned
property. After the recovery of judgment in that action
the coroner sold the property under the attachment pro-
cess, and the proceeds were applied in satisfaction of
said judgment. The person chosen as assignee by the
creditors having failed to qualify, the sheriff continued
in the trust, and as such assignee instituted this action
against Maul, and the sureties on his official bond, to
recover the value of the property so seized under said
writ of attachment. John C. Drexel, having succeeded
Bennett as sheriff, was substituted as plaintiff in the
suit. The trial resulted in a verdict against the defend-
ants, and from the judgment entered thereon they prose-
cute this proceeding.

The petition in error contains eighty-eight assign-
ments, but we shall specially notice only the more im-
portant of those argued by counsel.

The first two assignments of error relate to the sub-
stitution of John C. Drexel as party plaintiff for and
instead of Bennett, whose term of office had expired. A
complete answer to this is that no exception was taken
to the order in question at the time it was made, and
the substitution was not pleaded or raised as a defense
in the answer on which the trial was had.

Error is assigned because the court refused to sustain
a motion made by Drexel that he be dismissed out of the
case. To this ruling the record does not disclose that
the defendants caused an exception to be entered. We
must, therefore, presume that they were then satisfied
with the order as made, and they will not now be heard
to urge that it was erroneous.

Exception was taken to the introduction in evidence
of a copy of the official bond of the defendant Maul, as
coroner of Douglas county. No useful purpose could
have been served by the admission of that instrument
in the evidence, since the execution, delivery, and ap-
proval of the bond were alleged by the petition and ad-

mitted to be true by the answer, so that no prejudice could have resulted to the defendants from the ruling under consideration.

It is argued that the petition fails to state a cause of action, because it appears from the record and proceedings in the case that John C. Drexel is not the real party in interest in the suit. Section 5, chapter 6, Compiled Statutes, relating to assignments, provides that "in every such assignment the sheriff, and his successor in office; of the county in which the assignor resides, or if there be two assignors, in which one of them resides, or if there be more than two assignors, in which two or more of them reside, shall be named as assignee." In strict compliance with this provision the deed of assignment in the case at bar was made to George A. Bennett, as sheriff of Douglas county, and his successor or successors in office, in trust. Drexel succeeded Bennett as sheriff of the county, and the duty of carrying out the trust by virtue of the statute and deed of assignment devolved upon the former upon the expiration of the term of the latter, since the person chosen by the creditors of the assigned estate failed to qualify or enter upon the duties of assignee. The assignment was not made to Bennett as an individual, but to him in his official capacity as sheriff, and to his successor in office. It is plain that Drexel is the real party in interest.

Objections were urged in the trial court to the introduction of the deed of assignment in evidence, and they have been renewed in this court. It is strenuously insisted that the deed of assignment is void for various reasons: First—The assignment runs to George A. Bennett, sheriff, and not as sheriff. This objection is exceedingly technical, and devoid of merit. The section of the assignment law, already quoted, requires every assignment for the benefit of creditors to be made to the sheriff and his successor in office, and this deed of assignment was so made, not to Bennett as a private individual, but in his official capacity as sheriff of the county.

Second—The deed of assignment refers to a certain schedule on file in the office of the county judge of Douglas county, for a more specific description of the property assigned, while such a schedule was not annexed to the assignment. The assigned estate was with such sufficient particularity described in the deed of assignment as to enable the same to be readily identified, and the failure to attach the schedule in question to said deed did not invalidate the assignment. Third—The property was not conveyed to Bennett and his successors as required by law, but "unto the said sheriff, George A. Bennett, and successors who may be appointed by the county clerk of Douglas county, Nebraska, according to law, and their assigns, in trust, for the use and benefit of all the creditors of said copartnership of Rhoads & Sievers," etc. That portion of the provision quoted relating to the successor or successors who may be appointed by the county clerk is nugatory, but such clause does not invalidate the whole assignment. The statute designates the manner in which a successor of an assignee of an insolvent estate shall be chosen, and such mode will prevail over any different direction upon the subject in the deed of assignment. No successor of the assignee could be chosen by the county clerk, and none has been so selected, and the deed of assignment does not attempt to authorize such officer to make such appointment. It merely conveys the property in trust to the assignee and his successor or successors "who may be appointed by the county clerk." It is obvious that the use of this clause was a mere clerical error of the scrivener, and its insertion was not intended as a limitation upon the statute. Fourth—The assignment confers powers upon the assignee other and different from those prescribed by the statute. The argument of counsel for defendants has failed to convince us that this objection was well taken. On the other hand, it is very evident that this assignment can be enforced without in any manner contravening the law relating to assignments. The assign-

ment does not give a preference to the smaller over the larger creditors, since it is expressly stipulated that the proceeds arising from the assigned estate should be distributed "among all our creditors in proportion to the amount of their respective debts." No preference whatever was attempted to be given to one debt or class of debts over another; but all creditors were to share *pro rata* in the proceeds.

Another objection urged to the receipt in evidence of the assignment is that it was not executed or acknowledged in the manner in which a conveyance was required to be executed and acknowledged. This objection was exceedingly general, and did not indicate to the trial court the particular defects relied upon to invalidate either the execution or acknowledgment of the instrument. (*Gregory v. Langdon*, 11 Neb. 166; *Rupert v. Penner*, 35 Neb. 587.) The deed of assignment was signed "Rhoads & Sievers, by D. G. Rhoads and Wm. Sievers," and to the instrument is appended the certificate of acknowledgment by a notary public of Douglas county reciting that Rhoads & Sievers, a copartnership composed of Darius G. Rhoads and William Sievers, to the officer known "to be the identical persons who subscribed the foregoing instrument and assignment, and acknowledged that they executed the same as copartners, and as such the same was their voluntary act and deed for the uses and purposes therein set forth." The assignment having been signed by the firm of Rhoads & Sievers and an acknowledgment of the execution of the instrument, we are not called upon, under the general objection urged to the introduction of the deed of assignment in evidence, to decide whether the form of the execution and acknowledgment of the instrument were technically accurate and sufficient to satisfy the demands of the statute.

It is insisted that the deed of assignment is invalid and should not have been admitted in evidence, since it was not filed in the office of the register of deeds of Douglas

Maul v. Drexel.

county until July 13, 1893, three days after its execution. By section 6, chapter 6, Compiled Statutes, it is provided that a deed of assignment "within twenty-four hours after its execution shall be filed for record in the clerk's office of the county in which the assignee resides. If it shall convey real estate it shall be recorded in the deed record, and entered upon the numerical index in said office, otherwise it shall be recorded in the miscellaneous record. * * * A failure to file such assignment for record within the time aforesaid in any county in which by the terms of this section it is required to be recorded, shall avoid such assignment as to property situate in such county," etc. After the foregoing provisions became a law the legislature created the office of register of deeds for each county of the state containing a certain population (Session Laws 1887, ch. 30), and instruments affecting real estate are required to be filed and recorded in such office. This assignment conveyed no real estate, as the assignors owned none, but personal property merely, and is not invalidated because not recorded by the register of deeds. It was filed in the office of the county clerk of Douglas county within twenty-four hours after its execution, which is in compliance with the strict letter of the statute, and is sufficient. (*Lancaster County Bank v. Horn*, 34 Neb. 742.)

It is argued that the decision just cited is not in point here, since in that case the assignment was of personal property alone. That is precisely the situation of the assignment before us. Rhoads & Sievers owned no real estate and the deed of assignment described none as being conveyed or assigned. It is true a certain leasehold interest of the parties in realty was assigned. But such interest was not real, but personal, property. (*Mulloy v. Kyle*, 26 Neb. 316.)

It is suggested that the assignment is void on its face for the alleged reason that it does not transfer to the assignee all the property, real and personal, of the assignor. If this argument is sound, we fail to comprehend

the plain import of the language of the deed of assignment. It in express terms purports to convey all the right, title, and interest of the insolvents in and to all their property.

Complaint is made of the admission by the trial court in evidence, over the objection of the defendants, of the inventory and appraisement of the property under the writ of attachment. The defendant Maul, in his official capacity as coroner, participated in, and signed, the appraisement, which fixed the value of the goods in controversy at $2,810.90. The appraisement was an admission of Maul in writing, over his own signature, of the value of the property, and such paper was competent evidence tending to prove such value in an action against him and the sureties on his official bond for the conversion of the goods by reason of the levy of the writ of attachment. The receipt in evidence of the inventory was not conclusive on the question of value, but that it was proper to allow the same to go to the jury there cannot be a shadow of doubt. Admissions against interest are invariably receivable as evidence against the party making them, according to the writers on the law of evidence.

Many rulings of the court below on the introduction of evidence relating to the value of the property are argued in the brief of counsel, which, owing to the length of this opinion, we will not discuss separately. We have patiently examined all of them with considerable care and find no substantial cause for complaint, or that defendants were prejudiced by the rulings assailed. The value of the property as stated in the appraisement, with the interest thereon until the date of the verdict, it is conceded by counsel, equals the sum found by the jury, and which evidence alone, had all other testimony offered by plaintiff on the subject of value been excluded, would have been ample to sustain the amount of the recovery in this case. The property was sold under the attachment proceedings to C. B. Havens, and the defendant endeavored to prove the amount which the property brought

at such sale. The evidence was excluded, and we think it was properly rejected. The sum realized by the officer at the attachment sale was no proper criterion for determining the value of the goods at the time of their conversion. (*Watson v. Coburn,* 35 Neb. 499.)

The following instruction is criticised: "Under the pleadings and evidence in this case the plaintiff is entitled to recover of the defendant the fair market value on the 20th of July, 1893, of the articles mentioned in the plaintiff's petition and proved to have been taken from the sheriff by defendant Maul under and by virtue of his writ of attachment on the 20th of July, 1893, and interest thereon at seven per centum per annum from that date to February 5, 1895." By the foregoing the court directed a verdict for plaintiff below, submitting to the jury for their consideration the single question as to the value of the property. No other issue of fact was tendered by the pleadings. It is true that the answer pleaded that the assignment was void for certain reasons appearing on the face of the instrument, which raised questions of law for the court alone to decide, which objections to the validity of the assignment we have already sufficiently considered. The plaintiff, under the pleadings, was entitled to a verdict, the amount alone being for the jury to pass upon, and the instruction quoted was, therefore, not erroneous.

Objection is urged against the second paragraph of the court's charge, which reads as follows: "By fair market value is meant the value of the property in controversy for the most advantageous uses to which it might then have been applied,—the highest price it would then have brought for any and all uses. It is what any one who wanted it, and who was willing to pay what it was worth, cash down, would have been willing to have paid for it." Undoubtedly the measure of damages for conversion is usually the fair market value of the property at the time and place of conversion. It is argued that this rule is infringed by the instruction now being considered, for the reason that the uses to which the property might have

Maul v. Drexel.

been devoted do not enter into the question of value. In determining the market value of real estate this court said in *Lowe v. City of Omaha*, 33 Neb. 587, "it was proper to take into consideration not only the use to which it was at that time devoted, but the availability for any other purpose and the demands therefor, so far as the same entered into and affected its market value. If it was worth most in the market as a residence, the plaintiff was entitled to have such value considered, but if it would have sold for the highest price for some other use to which it was adapted, she was entitled to that. The market value of any thing is the highest price it will bring for any and all uses." In the opinion in that case several adjudications of other courts are cited which fully sustain the doctrine quoted, and the rule is equally applicable in determining the value of personal property. If a horse is converted, the owner is entitled to recover its value not alone for the purpose to which it is devoted, but the highest market price it will command for any and all purposes to which the animal is adapted. Defendants could not have been prejudiced by limiting the recovery to the cash value of the property. Experience has shown that property will sell less for cash than on time, so that if the use of the words "cash down" in the instruction was erroneous, such error is not available to the parties assailing the verdict and judgment.

The defendants complain of the refusal of the court to instruct the jury that they should disregard the appraisement introduced in evidence in determining the value of the property. Such an instruction was tendered, and refused, but no exception was taken by the defendants at the time. It has been often judicially asserted that exceptions to instructions, whether given or refused, must be taken at the time or they will not be reviewed in the appellate court.

The record discloses that the defendants have had a fair and impartial trial, and, no reversible error appearing, the judgment is

AFFIRMED.