CHARLES A. WOODWARD v. EMMETT S. McCOLLUM AND STATE BANK OF NEW SALEM.

Opinion filed February 20, 1907.

**Vendor and Purchaser — Title Free from Reasonable Doubt.**

1. In an action to compel specific performance of a contract for the purchase of real property, the vendee defended upon the ground among others, that the vendor could not transfer to him a title free from reasonable doubt in conformity to Rev. Codes 1899, section 5032. *Held,* that such defense was not established.

**Same — Signature by Initials.**

2. In one of the deeds in plaintiff's chain of title the grantor signed his Christian name merely by the initials, but the body of the deed set forth his full Christian name, as well as surname. This was sufficient.

**Deeds — Description of Parties.**

3. One deed in the chain of title described the grantees as "Chauncey C., Frank E. ,and Henry S. Woodworth." This was suffiicent to vest a two-thirds interest in Chauncey C. Woodworth and Frank E. Woodworth.

**Same — Identity of Grantor.**

4. A deed from Henry S. Woodworth was signed "Harry" S. Woodworth, although in the body of the instrument the correct name was given. *Held* sufficient; the identity of the person being apparent.

**Specific Performance — Defective Title.**

5. The vendee was bound to point out the defects complained of in the vendor's title, and by pointing out specific defects he waived those, if any, not mentioned by him.

**Mortgage — Merger.**

6. A mortgage appearing of record against the property is *held*, for reasons stated in the opinion, not to be a cloud upon plaintiff's title.

**Specific Performance — Delay of Vendor — Time Essence of Contract.**

7. Plaintiff's delay in furnishing title to defendant was not under the circumstances detailed in the opinion sufficient to relieve defendant of his contract duty to accept and pay for the property. Time was not made the essence of the contract, and, further, such delay was waived by defendant.

**Vendor and Purchaser — Destruction of Property on Land Sold on Contract.**

8. A barn on the premises was destroyed by fire after the contract for deed was executed without the fault of either party, and it is *held* that this fact does not prevent specific performance of the contract as the loss must be borne by the vendee; he being the beneficial owner in equity of the property.

Appeal from District Court, Morton County; *Winchester,* J.

Action by Charles A. Woodward against Emmett S. McCollum. Judgment for plaintiff. Defendant appeals.

Affirmed.

*S. N. Nuchols* (Thad L. Fuller, of counsel), for appellant.

Vendor must be ready and able to give a marketable title. Sec. 5032 Rev. Codes 1899; Swayne v. Lyon, 67 Pa. St. 436; Vought v. Williams, 120 N. Y. 253, 24 N. E. 195. Identity of person appearing under different names must be shown by extraneous proof. Vickery v. Burton, 69 N. W. 193, 6 N. D. 245. Transfer of mortgage by quitclaim is ineffective unless the mortgage debt is transferred also. 15 Am. & Eng. Enc. Law 849; Peters v. Jamestown Bridge Co., 5 Cal. 335; Cooper v. Newland, 17 Abb. Pr. 342; Bowers v. Johnson, 49 N. Y. 432; Pratt v. Scofield, 45 Me. 386; Pease v. Warren, 29 Mich. 9.

*W. H. Stutsman,* for respondent.

A curable defect not assigned as a reason for refusing a deed, cannot prevent a decree of specific performance. Wold v. Newgard, 94 N. W. 859.

A quitclaim deed by a mortgagee discharges the mortgage. Miles v. Ransford, 7 Cow. 20; Thayer v. McGee, 20 Mich. 195; Mason v. Beach, 13 N. W. 884; Conner v. Whitmore, 52 Me. 185; Lamprey v. Nudd, 29 N. H. 299; Cook v. Cooper, 18 Ore. 145; Roduignez v. Hayes, 76 Texas 225; 1 Hill. Mortg. p. 550; Thorndike v. Norris, 24 N. H. 460.

Fisk, J.   This appeal is from a judgment rendered by the district court of Morton county awarding specific performance of a certain contract for the sale of real property. The judgment was in favor of the plaintiff, Charles A. Woodward, and the defendant, Emmett S. McCollum, appealed and asks a trial de novo of the entire case in this court.

The complaint alleges ownership of the property in question in plaintiff prior to and at the date of the contract for deed, September 9, 1902, which property consisted of 640 acres, being section 33, township 140, range 84, in Morton county, upon which were situated certain buildings, including a large barn. It also alleges that under the terms of the contract defendant, McCollum, agreed to purchase said property and pay therefor the sum of $10 per acre, $1,000 to be paid at the date of contract, and the balance on or before November 15th thereafter. The vendor agreed on the final payment of the purchase price to convey such land to defendant free from any incumbrance by a good and sufficient warranty deed, and he also agreed to furnish the defendant an abstract of title showing the same to be free from incumbrance. The contract was executed on the part of plaintiff as party of the first part by one John Bloodgood, who is referred to in the contract as "John Bloodgood, agent," and the same is signed in the same manner, without disclosing his principal, and also by defendant. However, this fact is not deemed material as plaintiff afterwards fully ratified such contract, and defendant does not question the validity thereof. It is alleged that defendant went into possession of the land under such contract, but subsequently abandoned the same and repudiated all ownership therein. Then follow allegations as to plaintiff's tender to defendant on November 15th and at divers subsequent dates of a good and sufficient warranty deed conveying the land to him, together with

abstracts of title showing such land to be free from incumbrance, and that he has at all times since been able, ready and willing to perform his part of such contract, and a refusal on defendant's part to accept such deed or in any manner to perform such contract by paying the balance of such purchase price, and paying for a foreclosure of plaintiff's lien as vendor for the balance due, with interest.  Defendant answered, denying that he went into possession of the land under said contract; also denying that plaintiff ever tendered a good and sufficient conveyance in accordance with the contract and that such land is free from incumbrance; and also denying that plaintiff tendered an abstract showing the title to be free from incumbrance.  He alleges that between April 10, 1903, and July 1, 1903, the barn on said premises was destroyed by fire without his fault, and that same at the date of the contract was worth $1,200. Certain other matters are alleged in the answer which it is unnecessary to mention here.  The parties do not disagree in any material respect as to the evidential facts, but they do disagree as to the ultimate facts deducible therefrom.  Appellant does not deny the execution of the contract as alleged, but he insists that plaintiff has failed to show that he has a perfect title to the property so as to enable him to transfer to appellant such title free from reasonable doubt, and he invokes the statutory rule embodied in Rev. Code 1899, section 5032, that "an agreement for the sale of property cannot be specifically enforced in favor of the seller, who cannot give the buyer a title free from reasonable doubt."  This provision of our Code is a declaration of the common law rule "that the vendor must be ready and able to convey a marketable title."   Swayne v. Lyon, 67 Pa. 436.  In Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634, the rule is stated thus: "A purchaser is not compelled to take property the possession of which he may be compelled to defend by litigation.  He should have a title that will enable him to hold his land in peace, and, if he wishes to sell it, be reasonably sure that no flaw or doubt will arise to disturb its market value."   See, also, Easton v. Lockhart, 10 N. D. 181, 86 N. W. 697, and cases cited.

Appellant contends that plaintiff has failed to bring himself within this rule and hence cannot recover.  What are the facts?  Appellant concedes in his printed brief that on November 17, 1887, one Chauncey B. Woodworth had good title to all the land; that on April 13, 1888, he conveyed by warranty deed an undivided one-fourth

interest in said land to one Samuel H. Woodworth, who gave a mort-gage back on such interest to secure the payment of $3,000. Subse-quently S. H. Woodworth executed to Chauncey B. Woodworth a deed purporting to convey to him a one-fourth interest therein. Thereafter Chauncey B. Woodworth, mentioned as party to the first part, purported to convey by deed the whole of such land to "Chauncey C.," "Frank E.," and "Henry S. Woodworth," which deed is signed "C. B. Woodworth." Next is a deed executed by Frank E. Woodworth and "Harry" S. Wood-worth, purporting to convey an undivided two-thirds interest in said land to Charles A. Woodward, the plaintiff. And, lastly, it having been proved that Chauncey C. Woodworth had died testate, it is conceded that deeds were executed to plaintiff by Sarah E. Wood-worth as sole beneficiary under the last will and testament of Chaun-cey C. Woodworth, deceased, also a deed from her as executrix of such last will and testament; also a deed from one L. N. Cary, as administrator with the will annexed of said decedent. Appellant's objection to plaintiff's title appears to be based upon the fact that some of the deeds were signed merely by the initials of the grantor, instead of by his full Christian name. We think such objection with-out merit. It appears that in each case where the grantor signed sim-ply by his initials instead of his full Christian name the body of the deed gives the full Christian name and surname; and not only this, but the attestation clause recites that the grantor described signs it, and the notary before whom it was acknowledged certifies that the persons signing are the grantors named in the deed. Rupert v. Pen-ner, 35 Neb. 587, 53 N. W. 598, 17 L. R. A. 824, and Middleton v. Findla, 25 Cal. 76, are authorities directly in point, holding adverse-ly to appellant's contention. See, also, numerous cases cited in the opinions in these cases holding to the same effect. The case of Vickery v. Burton, 6 N. D. 245, 69 N. W. 193, cited by appellant, is not in point. In that case it was held that there was no presump-tion of law that Pulaski J. Scovil and P. J. Scovil were one and the same person. That case differs from this, however, for the reason that in that case there was no evidence of the identity of the persons, while in the case at bar the certificate of the notary attached to the instrument supplied such proof.

It is next urged that one deed in the chain of title runs to Chaun-cey C., Frank E., and Henry Woodworth, without giving the sur-names of the first two grantees; and it is contended that such description is insufficient to transfer any title to Chauncey

C. Woodworth and Frank E. Woodworth, through whom a portion of plaintiff's title is derived. The objection is clearly frivolous. The first two Christian names unmistakably describe two persons who have the same surname as the third person mentioned. Language used in a deed of conveyance of real property, as well as other contracts, should be given a common-sense interpretation, to the end that the evident meaning and intention of the parties may be given effect.

The deed from Frank E. and Henry S. Woodworth to plaintiff was signed by Henry as "Harry," and appellant insists that such instrument was insufficient to convey Henry's title to plaintiff. We must overrule this contention. Harry is a corruption of the name "Henry," in universal use; not only this, but all the circumstances show that the same person was intended. The contract for deed from Henry to plaintiff recites party of the first part as "Henry," although the signature is "Harry" and the certificate of the notary shows the identity of the person; not only this, but the other owners join in the same instrument. Taking these circumstances into consideration, we have no hesitancy in holding that the instrument thus signed was sufficient to transfer Henry's interest.

Furthermore, and to our mind a conclusive answer to this point, such objection was not urged until after this action was brought, although the abstracts of title were critically examined by defendant and certain other alleged defects in plaintiff's title pointed out. This is true in regard to the other alleged defects, and for this reason alone appellant cannot now be heard to urge them as a reason for refusing to comply with this contract, as all of such defects could have easily been cured by respondent if appelllant had based his objections thereon. Wold v. Newgard (Iowa) 94 N. W. 859. It was respondent's duty to point out the defects relied upon.

One other objection urged by appellant to the sufficiency of plaintiff's title remains to be noticed. The mortgage executed by Samuel H. Woodworth to Chauncey B. Woodworth on April 13, 1888, was never satisfied upon the records, and it is contended that the same constitutes a cloud upon the title. At the time this mortgage was given the mortgagee conveyed to the mortgagor a one-fourth interest in the land. Subsequently, and on November 9, 1903, the mortgagor reconveyed such interest to the mortgagee, presumably in satisfaction of the mortgage, and the deed of conveyance contained a stipulation that the mortgage should not merge in the

title thereby acquired by such grantee, "but should remain in force as a valid mortgage thereon for the purpose of protecting and perfecting the title of second party to said premises." The evident object of the stipulation was to protect Chauncey B. Woodworth, the grantee, as against any subsequent liens created by Samuel H. Woodworth upon the property, and any judgments which may have been recovered against Samuel H. Woodworth while the title was in him, but no such precaution was necessary, as the abstract of title discloses that no such liens existed. The mortgage did not merge in the fee title so long as it was to the advantage of Chauncey B. Woodworth that it should not; but, when he conveyed to third parties his entire interest in the land without mentioning the mortgage, we think the same at once became merged in the fee title, and the grantees acquired the title free from the lien of the mortgage. Such we understand to be the well-settled rule. Webb v. Meloy, 32 Wis. 319, 20 Am. & Eng. Enc. of L. 1067, and cases cited. But even if there was no merger prior to such conveyance by Chauncey B. Woodworth, we are of the opinion that such conveyance by him would operate to transfer not only his fee title, but his rights as mortgagee, and his grantees could treat such mortgage as assigned or as released and satisfied, as should be to their advantage.

Thayer v. McGee, 20 Mich. 195; Mason v. Beach, 13 N. W. 884, 55 Wis. 607; Conner v. Whitmore, 52 Me. 185; Lamprey v. Nudd, 29 N. H. 299; Cook v. Cooper, 18 Or. 145, 22 Pac. 945, 7 L. R. A. 273, 17 Am. St. Rep. 709; Rodinguez v. Hayes, 76 Tex. 225, 13 S. W. 296.

The suggestion by appellant's counsel that, for aught that appears, the note or notes secured by this mortgage may now be in the hands of innocent third parties, is without merit. The mortgage shows upon its face that it was not given to secure notes at all, but was given to secure the performance of a certain contract. This being true, it follows that there can be no innocent third parties whose rights can be involved. We are of the opinion, therefore, that the mortgage in question constituted no cloud upon the title to this land, and could not be urged as a reason for appellant's refusal to accept the deed tendered by respondent.

Appellant also insists that plaintiff lost his right to compel specific performance of the contract in question on account of his delay in performing the terms of the contract on his part. While it is true that by the terms of the contract plaintiff was to furnish title upon

appellant's making final payment of the purchase price, which was to be made on or before November 15, 1902, and while appellant was ready and willing to pay such purchase price shortly after November 15th, and was prevented in completing the deal at that time on account of respondent's delay in perfecting the title to appellant's satisfaction, still we are of the opinion that respondent's delay under the circumstances cannot operate to defeat his right to specific performance. Time was not made the essence of the contract, and, furthermore, we think appellant waived the delay by demanding that the title be perfected through the probate proceedings. True, appellant may have had the right to rescind the contract because of the delay, but we think he waived such right by demanding as late as February 14, 1903, that the record title be perfected through probate proceedings. By such demand he necessarily impliedly consented to such extension of time for performance as was reasonably necessary to institute and complete the probate proceedings, and it does not appear that more time than this was consumed. We therefore must overrule this contention.

One other question remains to be considered. In the month of May, after the contract had been entered into, a valuable barn on the premises was destroyed by fire without the negligence of either party, and we are asked to decide which party must bear the loss, and, if plaintiff should bear such loss, then what effect, if any, should this have upon plaintiff's right to compel specific performance of the contract. A decision of this question necessarily involves the question as to the ownership of the property at the time of the fire; for upon the plainest principles of justice the loss should fall upon such owner. Formerly it was held that such loss should be borne by the vendor, but the modern authorities seem to be unanimous in holding it as above stated, although there is some conflict as to who should be considered the owner under such a contract. 29 Am. & Eng. Enc. of Law, 713, and cases cited.

While there is a diversity of judicial opinion as to the relations existing between the parties to such a contract, the great weight of authority is to the effect that upon the execution of the contract the purchaser becomes the beneficial owner in equity and the vendor retains the legal title in trust for such vendee. Am. & Eng. Enc. of Law (2nd Ed.) 703, and cases cited; Clapp v. Tower et al., 11 N. D. 557, 93 N. W. 862; Nearing v. Coop, 6 N. D. 349, 70 N. W. 1044; Roby v. Bank, 4 N. D. 156, 59 N. W. 719, 50 Am. St. Rep. 633;

Moen v. Lillestal, 5 N. D. 331, 65 N. W. 694; Pom. Eq. Jur. section 368, and cases cited; Warvelle on Vendors (2nd Ed.) 842; Lombard v. Chicago Sinai Congregation, 64 Ill. 477. "The great weight of authority is to the effect that since the purchaser is, in equity, the owner, he must bear all losses, whether at law or in equity." Am. & Eng. Enc. Law, p. 713, and cases cited.

This is not a harsh or unjust rule, for the purchaser is at liberty to protect himself against loss, as he has an insurable interest in the property and he must be held to assume those risks which are ordinarily incident to such ownership. If, from any reason the property enhances in value during this time, he reaps the benefit, and hence it is no injustice to require him to bear any loss or deterioration, not the fault of the vendor.

We therefore have reached the conclusion that the plaintiff is entitled to the relief granted by the district court, and the judgment of that court is accordingly affirmed. All concur.