| 137 | 203 |
| 220 | ¹313 |
| 137 | 203 |
| 226 | ²567 |
| 39SC¹641 | |

# J. A. DATZ ET AL. v. CYRUS PHILLIPS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued March 31, 1890—Decided October 13, 1890.
[To be reported.]

1. One must do equity before he asks equity. Specific execution of a contract is not of right, but of grace; and he who seeks relief at the hands of a chancellor must show himself ready and willing to do all that he ought in good conscience to do, and, if he do not, his bill will be dismissed.

2. If the contract is not fair, or the conduct of him who asks its enforcement is not just and conscionable, or, if there be independent circumstances which will render the operation of a decree of specific execution harsh and inequitable, the parties will be left to their remedies at law.

(a) The plaintiffs, in a bill to restrain the maintenance and require the removal of windows in a party wall, set out the terms of an agreement between the parties relating to the windows. The defendant answered that the stipulation set out was but a part of an arrangement made before the building of the wall was begun.

(b) He answered, further, that under the arrangement and a stipulation therein that plaintiffs would supply to defendant's building a sewer connection through their property, he had surrendered his right to a privy well on plaintiffs' lot, and had erected a party wall, with no opening on the first floor, against which the plaintiffs had erected their building.

(c) And further, that the plaintiffs had neglected and refused to comply with the agreement on their part, and had neither provided the defendant with a sewer connection, as they had stipulated, nor offered to make any substitute or compensation therefor. The master found the facts to be as alleged in the defendant's answer:

3. Whether the stipulations in the agreement were severable or not, was not the important question, but whether the position and conduct of the plaintiffs was such as to give them standing in equity. Having themselves violated the agreement, in every important particular, they could not ask for enforcement in equity of the part of it relating to the windows.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 149 July Term 1889, Sup. Ct.; court below, No. 247 December Term 1886, C. P. No. 4, in Equity.

Statement of Facts.

On December 16, 1886, Jacob A. Datz and F. W. Midden-dorf filed a bill in equity against Cyrus Phillips and Milton Phillips, which averred that the plaintiffs were the owners of two lots of ground, Nos. 70 and 72 on the west side of North Fourth street, the rear ends of which abutted against the east side of a lot fronting on Arch street owned by the defendant Cyrus Phillips; praying that the defendant and his lessee be restrained from maintaining a certain alleged nuisance, to wit, certain windows in the party wall between the properties owned by plaintiffs and defendant, and that they be directed to abate the same, and cause the said windows to be removed and the space occupied thereby to be built up to the thickness required by law, and for further relief.

The defendant filed an answer denying plaintiffs' right to have the windows closed, and charged that the said windows were put in the wall with the consent of the plaintiffs, given for certain concessions made by Cyrus Phillips with respect to an easement of a certain privy well on the plaintiffs' property in favor of the Phillips property, alleging that the plaintiffs agreed, in consideration that Cyrus Phillips " would consent and permit them to fill up said necessary well and relieve their property from said servitude and permit them to build over it," they, the plaintiffs, would, at their own proper cost and charges, make a connection between the rear of the Phillips property and the public sewer in Fourth street, by means of properly connected drain-pipes; that the plaintiffs neglected and failed to make such drainage connection, although frequently requested etc., concluding the answer with an averment as follows :

" 6. And I further charge and aver, that it is contrary to equity and good conscience that the plaintiffs should be per-mitted to hold their property practically released from the ease-ment of the necessary well, and build over the same, and at the same time not only neglect and refuse to furnish me with proper sewer connections, but also compel me to close up the windows opening on said area, thereby depriving me of any compensation whatsoever for the extinguishment of the easement of said ne-cessary well, which was conveyed to me with my said property."

The defendant, Cyrus Phillips, desiring affirmative relief, filed a cross-bill, on February 9, 1887, setting up substantially the same facts stated in his answer, and prayed the court, upon

final hearing, to order and direct the defendants therein, viz., Datz and Middendorf, to restore said privy well, and not to interfere with or hinder the owners, tenants and occupiers of his property, in the free use of the said well, and for further relief.

To the cross-bill the defendants therein answered, denying " that the said windows were constructed in the said party wall with the consent of the plaintiffs in said bill, as in the said answer is alleged," and, admitting certain other averments in the cross-bill, answered in respect to the privy well as follows:

" 3. We admit that the aforesaid necessary well on the premises, No. 70 North Fourth street, was about nine feet in diameter, and with a suitable privy building thereover, but we deny that the western limit of the said building was about two feet east of the eastern line of complainant's property, No. 410 Arch street.

" 4. We admit that we have torn down said privy building and filled up said necessary well, but we aver we did so with the consent of the said complainant and after he had destroyed the part of the said privy building used by him ; and we agreed, in consideration of the abandonment of the said well, to permit the said Phillips to make a connection with drainage pipes through our said premises, and we constructed through our said premises, Nos. 70 and 72 North Fourth street, a suitable drain-pipe and carried the same to the party wall of the complainant, and have been and now are ready and willing that the complainant should use the said drain-pipe, but the said complainant has refused to use the same. And further answering, we show that said necessary well was a nuisance to the said complainant and to us and was filled up and abandoned by the mutual desire and consent of both parties to this suit."

The controversy arising will be illustrated by the accompanying plan.

Issues having been joined, the proceedings were referred to *Mr. Henry K. Boyer*, as examiner and master, who, on April 8, 1889, filed a report finding in part as follows:

The plaintiffs and the defendant, Cyrus Phillips, entered into a verbal agreement, in December, 1879, or in the early part of 1880, whereby it was agreed substantially : 1. Cyrus Phillips agreed to surrender his right to use the " necessary well," and to give up and abandon the easement upon the plaintiffs' prop-

erty in his favor, and in consideration thereof the plaintiffs agreed to construct a 12-inch drain through their property, for

N.

ARCH STREET.

No. 410.

Phillips.

Datz.

No. 72.

FOURTH STREET.

Well.

Datz.

No. 70.

Archway.

Proposed Drain.

S.

the use of Cyrus Phillips, the tenants and occupiers of the premises, No. 410 Arch street, running from the rear end of the Phillips property to and connecting with the public sewer in Fourth street.    2. And the plaintiffs agreed to give the defendant, Cyrus Phillips, the right to construct nine windows in a portion of his party wall, in consideration whereof the plaintiffs were not to pay for the party wall used by them, so long as the windows were allowed to remain, with the understanding or condition that the plaintiffs might at any time require the defendant, Cyrus Phillips, to close the windows, which he agreed to do, and then the plaintiffs would become liable to pay for the party wall used by them.

Cyrus Phillips kept his agreement with respect to the well, and, relying upon his belief that the plaintiffs would keep their agreement with respect to the drain, he built this party wall without any opening therein to gain access to the privy, and

permitted the plaintiffs to demolish the said well and build over it. Phillips also built an arch in the rear end of the party wall, through which he intended to introduce to his premises the drain-pipe, when constructed as agreed upon. The plaintiffs had knowledge of what the defendant Phillips had done, and that the plan of his building contemplated the erection of his water-closets in the rear end of his building in the southwest corner thereof. Yet, regardless of his rights under the agreement, they constructed for their own use a small drain-pipe connecting with their water-closets in the northwest corner of their building, about forty feet north of the said arched way, and running thence eastward along the north side of No. 72 North Fourth street into the said public sewer in Fourth street; and, for the accommodation of Cyrus Phillips, in fulfilment of their agreement with him, as they alleged, they ran a branch pipe southward to a point about twelve feet north of the said archèd way or opening in the wall, and informed him that he might connect with it. This he declined to do, and justly so. It was not such a drain as they had agreed to give him. It was not a twelve-inch drain or large enough for his purposes, nor was it put where or constructed so that he could use it. . . . . .

Cyrus Phillips, after waiting a long time and fearing that his right of action against the plaintiffs for the value of the party wall would be barred by lapse of time, and not having anything in writing to show the agreement or to protect him, again applied to the plaintiffs to have the disputed matters settled. This led to a demand for the value of the party wall, which was finally paid. Notice was then given by plaintiffs to Phillips to close the windows, which he declined to do. Phillips admits in his answer that the notice was given and that he did decline to comply with it.

Phillips included in his demand for the value of the party wall, interest thereon from the time the same was taken, and insisted upon its payment, and the plaintiffs accordingly paid it. The interest on the value of the wall used was the only consideration, as such, which the plaintiffs were to receive from Cyrus Phillips for the privilege given him to have the said windows in the wall, and by thus demanding and receiving it, he ended and terminated the agreement between them in respect to the windows, and destroyed and annulled his right,

which was at best a mere revocable license to have and maintain the said windows in said party wall.

The license having been revoked, there seems to be no ground under the agreement upon which the defendant can base any just claim to continue in the enjoyment of the privilege he theretofore had. Indeed, the defendant practically concedes this in his answer and cross-bill. He claims, however, that plaintiffs are not entitled to the relief prayed for, because:

1. Inasmuch as the windows were constructed with the consent and permission of the plaintiffs, before the plaintiffs can maintain their aforesaid bill they must first establish their legal right to hold the property free of said easement, by an action at law.

2. The plaintiffs have not kept their agreement with him in respect to the substitution of a properly constructed drain-pipe for his use, in lieu of the easement in his favor upon plaintiffs' lot No. 70 North Fourth street, and

3. It is contrary to equity and good conscience that the plaintiffs should be permitted to hold their property practically released from the easement of the well and build over the same, and at the same time not only neglect but refuse to furnish him with proper sewer connections, but also compel him to close up the windows opening on said area, thereby depriving him of any compensation whatsoever for the extinguishment of the easement of said well, etc.; a sort of set-off in equity.

The cross-bill sets up the same matters in defence and prays affirmative relief. . . . . The specific relief asked cannot be granted, because it would be practically impossible " to restore said necessary well," and because it would be a nuisance and not nearly so desirable from any point of view, as a properly constructed drain. And the court can as readily require the plaintiffs to construct and furnish the drain as " to restore the necessary well."

The evidence shows that Cyrus Phillips, after waiting four years for the plaintiffs to put in the drain according to their agreement with him, was forced to put in a drain for the accommodation of his property, or else to submit to the annoyance, inconvenience and expense of keeping and maintaining said well in the cellar, which must have been not only a nui-

*Master's Report.*

sance and prejudicial to health, but also very expensive, requiring to be frequently cleaned out at an expense of $10.50 each time. He therefore laid a private drain along Arch street from his property to the sewer in Fourth street and ran pipes into it. This drain and connections cost him $380. He also dug a well, above referred to, in his cellar, into which his drainage flowed from the time the necessary well was abandoned until the said new drain was laid. This well was dug, however, before the plaintiffs were in default. It was intended, originally, for use between the time of the removal of the "necessary well" and the construction of the new drain by the plaintiffs, Datz and Middendorf. During these four years the defendant was obliged to clean out the well at a cost of $10.50 each time. The number of times was not proved. If, therefore, the defendant, Cyrus Phillips, shall be entitled to damages, the amount would be $380, with interest since, say September 1, 1884, that being the date by which the plaintiffs promised to have the pipe put in. Interest on $380 to March 1, 1889, 4 years and 8 months, would amount to $106.60, making a total of $486.60. Other items which might enter into a claim for damages were not clearly proven, and are therefore not taken into consideration. . . . .

—Upon the facts found by him, the master reported, as his conclusions of law :

1. The first objection of the defendant to the relief prayed for is not well taken. In the opinion of the master, the plaintiff's title or legal right to have the windows closed and the nuisance abated is clear and free from doubt. Both parties are practically agreed as to the nature and extent of the agreement with respect to the windows. In that sense, the agreements are separate and distinct. The rights of the plaintiffs, under that part of the agreement, are not in any way subordinate to or dependent upon their performance of the other agreement, which has reference to a separate and distinct subject. . . . . The agreement by its very terms and conditions concedes the plaintiffs' title or legal right. Why should the plaintiffs be put to the necessity of establishing what no one assails? The consent of the plaintiffs having been withdrawn, his rights ought to be restored. . . . . The evidence affirmatively shows that these windows are a serious nuisance.

They not only increase the plaintiffs' fire-risk, but render their buildings more liable to have fire communicated to them from defendant, and also render the plaintiffs' buildings less secure and private.    Besides these objections, windows in party walls are per se nuisances: . . . . . Vollmer's App., 61 Pa. 118.

2–3. Nor does the master think that plaintiffs' bill ought to be dismissed or relief be denied him because of the reasons, second and third, above assigned by the defendant, Cyrus Phillips.

The master has been greatly embarrassed in reaching a conclusion with respect to this part of the case.    He is fully convinced that the plaintiffs have not accorded to the defendant, Cyrus Phillips, the rights and privileges which the agreement between them with respect to the substitution of a suitable drain-pipe for the well contemplated, and this finding, coupled with the fact that the plaintiffs have not acted, as it appears to the master, in good faith with the defendant, would probably justify the master in recommending that the plaintiffs' bill be dismissed, but that course would not settle any question.

The master is of opinion that equity between the parties will be more effectually enforced, in this case, by sustaining the bill and making a decree securing to each party what he is justly entitled to, according to the agreement between them in respect to the matters in controversy between them.    And this the court can do in this case, because the defendant, Cyrus Phillips, has filed a cross-bill and has prayed for affirmative relief.

It may be observed with respect to the request of the defendant that the plaintiffs' bill be dismissed for the reasons stated in the answer, the master is of opinion that the findings of fact concerning those matters might justify such an order, but that would be of course upon the theory that those matters are [not?] so intimately connected with the subject matter of the bill as to be " embraced within the circle of contest," and justly termed " distinct yet connected topics of dispute " or " incidental matters," which is the theory upon which the cross-bill is maintained, as hereinafter stated.    If the subject matter of defence is sufficient to base a dismissal of the bill upon, then it is sufficient to support the cross-bill and entitle the defendant to affirmative relief.    If it is not sufficient for either, then the plaintiffs' bill ought not to be dismissed, but the relief

prayed for should be granted:—Citing and considering Mc-
Gowin v. Remington, 12 Pa. 63; Souder's App., 57 Pa. 502;
Allison's App., 77 Pa. 227; Pomeroy's Eq. J., §§ 181, n. 2,
1297; Bispham's Eq., § 478; and, as to the rules which apply
to cross-bills: Cross v. De Valle, 1 Wall. 16; Daniels' Ch.,
1542, n. 2; Field v. Schieffelin, 2 N. Y. Ch., Law. Ed., 264.

—The master, therefore, recommended a decree: (1) Adjudg-
ing that the windows in the party wall constituted a nuisance
kept and maintained by the defendant in the bill. (2) That
an injunction and order issue as prayed for. (3) That the de-
fendant, his heirs and assigns, and the tenants and occupiers of
premises No. 140 Arch street, were entitled to the right to
drain water-closets, basins, etc., from the rear of said premises
into the public sewer in Fourth street, by means of a properly
constructed 12-inch sewer along the south wall of premises No.
70 Fourth street, into said sewer. (4) That the plaintiffs be
ordered and required to construct and maintain said 12-inch
drain. (5) That the order (2) above shall not be enforced
until said drain shall have been constructed. (6) That the
plaintiffs pay the defendant the sum of $486.60, with interest
thereon from March 1, 1889, as and for the damages by him
sustained by reason of the default of the plaintiffs in not con-
structing the sewer as they had agreed; and that each party
pay one half the costs.

Both parties filed exceptions to the master's report, the ex-
ceptions of the defendant being as follows:

1, 2. The master erred in requiring the defendant to pay one
half the costs.

3. The learned master having reported that the plaintiffs had
acted in bad faith to the defendant and had not kept their
agreement with him and are not entitled to the relief prayed
for until they do perform their part of the agreement, he should
further have reported that the plaintiffs pay all the costs.[19]

4. The master having reported that the plaintiffs had acted
in bad faith towards the defendant, in the subject-matter of this
controversy, and that the defendant had only taken such steps
as were necessary for the protection of his legal rights, should
have reported that all the costs should be paid by the plaint-
iffs.[20]

Opinion of Court below.

Said exceptions having been overruled by the master and renewed before the court on the filing of his report, after argument thereof the court, THAYER, P. J., filed an opinion, which after stating the facts proceeded:

The defence set up in answer was, that before the parties rebuilt there existed on the premises of the plaintiff a certain privy well which was for the common use of both properties; that, in consideration of the defendant's abandoning his right to the easement on the plaintiffs' lot, the plaintiffs promised that they would lay down for the defendant's use a properly constructed drain from the rear of the defendant's property into the Fourth street sewer, and that they have not done so, but have broken their contract relating to that matter. In point of fact it appears from the evidence that the plaintiffs have built such a drain; but the defendant contends that it is not of the character or capacity of the drain they promised to put down. On the other hand, the plaintiffs claim to have fully complied with their contract relating to the drain.

Now, the two contracts, viz., the contract relative to the windows and that relating to the privy well and drain, are plainly independent contracts. There is nothing to show that the one was dependent upon the other. That seems to have been the opinion of the master, for he says in his report: "The plaintiffs' title or legal right to have the windows closed and the nuisance abated, is clear and free from doubt. Both parties are practically agreed as to the nature and extent of the agreement with respect to the windows. In that sense, the agreements are separate and distinct. The rights of the plaintiffs under that part of the agreement are not in any way subordinate to or dependent upon their performance of the other agreement, which has reference to a separate and distinct subject." And in another place he speaks of the agreements as two, "the two agreements, if we may so designate them, were made at or about the same time." Certain it is that Mr. Cheyney was employed by the defendant to draw up an agreement upon both subjects, but the plaintiffs refused to sign it, and it never was signed. Mr. Cheyney admits that the plaintiffs objected to it when it was shown to them. He says that he drew the paper "from his recollection of what took place." Mr. Cheyney's testimony is very vague, uncertain and unsatisfactory. He gives no con-

Opinion of Court below.

versation with Mr. Datz, but only his own conclusions, or the inferences which he drew from them. There had been a great deal of conversation between the parties relative to both subjects. Cheyney also had conversations with both parties. Being employed by the defendant to draw up an agreement, he did so. It did not suit the plaintiffs, and they refused to sign it, and that is the whole of it.

After a careful examination of all the testimony, we are of the opinion that there is no satisfactory evidence that these agreements were ever intended by the parties to be dependent upon each other, or that the performance of one was in any sense conditioned on the performance of the other. The subjects of the agreements were totally different. The considerations were different. They were never blended, and one agreement was not a consideration for the other. The breach of the agreement which the defendant sets up in the answer cannot be set off in this case, because the remedies upon the two agreements are totally different. The plaintiffs seek a specific performance, and that only. It is no answer to that to say that the plaintiffs have broken another agreement relating to another subject. The proper remedy of the defendant for a breach of the agreement to lay the drain-pipe, is an action at law to recover damages. The defendant has imported into the case something that has nothing to do with it, but which may be proper ground for an action at law.

As to the cross-bill filed by the defendant, it was altogether irregular and ought to have been demurred to. Indeed it is not properly a cross-bill, but an original bill under the guise of a cross-bill. A cross-bill is a mode of defence. The original bill and the cross-bill are one cause. The office of a cross-bill is to enable a defendant to have a discovery or to obtain a relief for himself in reference to the matter contained in the original bill. A cross-bill must be confined to the subject matter of the original bill, and cannot embrace new and distinct matters not embraced in the original suit. If it do so, no decree can be founded on those matters. This has been settled by many authorities: 3 Daniels' Ch., 1743; May v. Armstrong, 3 J. J. Marsh. 262 (20 Am. Dec. 137); Daniel v. Morrison, 6 Dana 186; Galatian v. Erwin, 1 Hopk. 48; Field v. Schieffelin, 7 Johns. Ch. 252; Gouverneur v. Elmendorf, 4 Johns. Ch.

357. The cross-bill must be confined to the subject matter of the original bill, and cannot introduce new matters not embraced in the original bill. If it do so, the cross-bill becomes itself an original bill, and there cannot be two original bills in the same cause: 3 Daniels' Ch., 1746; Story's Eq. Pl., 401; Jennison's Ch. Pr., 391; Andrews v. Kibbee, 12 Mich. 94 (83 Am. Dec. 766); Galatian v. Cunningham, 8 Cow. 361. The neglect to observe this simple and well established rule must necessarily produce confusion, and land the parties in a labyrinth of litigation from which it would be difficult to extricate them, and in which the judge himself might be hopelessly lost.

In the case now before us, we have, on the one hand, a bill for specific performance of an agreement to close and build up certain windows in a party wall; and, on the other hand, a cross-bill by the defendant to restore a privy well and to enjoin the plaintiffs from any interference with the free use thereof by the defendant. Before the master, the defendant, without any alteration of the cross-bill, substituted a claim for specific performance by the plaintiffs of an agreement to build a drain and a claim for damages for not building it. That specific performance cannot be decreed of such a contract, is too clear to require argument, the defendant having a full, complete and perfectly adequate remedy at law for the breach of the contract. The master, while awarding to the plaintiffs the specific performance which they prayed for, and to which they were justly entitled, awarded at the same time to the defendant specific performance by the plaintiffs of the contract to build the drain, and damages for not having built it. This is to introduce chaos into equity proceedings. But it was not the learned master's fault. The plaintiffs having neglected to demur to the cross-bill, and having put in an answer to it, the master very naturally proceeded to take cognizance of it, and to inquire into and report upon the subject matter of it. Of course the cross-bill must be dismissed, but without prejudice to the defendant's right to bring an action at law to recover damages for the alleged breach by the plaintiffs of their agreement to construct the drain for the use of the defendant.

A final decree having been entered restraining the defendant from maintaining the windows complained of and requiring

him to have the same removed and the spaces thereof built up
as prayed for, dismissing the defendant's cross-bill, without
prejudice, and ordering that the defendant pay the costs,[21] the
defendant took this appeal, specifying that the court erred,
inter alia:

19, 20. In not sustaining defendant's exceptions.[19][20]

21. In entering the foregoing decree.[21]

*Mr. M. Hampton Todd*, for the appellant:

1. We submit that the master's conclusion that the agree-
ment with reference to the privy well and drain-pipe and the
party wall and windows was made at one and the same time is
clearly shown by the testimony of the plaintiffs themselves.
Surely, under such circumstances, it would be most unjust to
allow the plaintiffs to enforce an agreement made in one part
of a conversation, and relieve them from the performance of an
agreement made in another part of the same conversation and
negotiation. The error of the court below arose from the as-
sumption that the defendant's rights could be fully compensated
by damages for the breach of the contract to build the drain.
The duty of the plaintiffs to construct the drain was only a
part of the contract. The part that gave equity jurisdiction
was entirely overlooked, and that was, the grant of an easement
to maintain in perpetuity the right of drainage across the
plaintiff's lots from the rear of defendant's property to the pub-
lic sewer on Fourth street. No action at law can compel the
grant of such an easement.

2. If the position of the court below be sustained, the de-
fendant will be compelled to file a bill in equity setting up sub-
stantially the same facts that are now before this court, praying
for a decree defining and ascertaining said easement and that
the property of the present plaintiffs is subject to the same.
Why, then, should not the court so decree in the present con-
troversy? The authorities cited by the master, we submit,
fully justify him in the view he takes, that equity has jurisdic-
tion to do justice between the parties in this proceeding. To
hold otherwise, is to permit these plaintiffs, whom the master
finds to have acted in bad faith to the defendant, to take advan-
tage of their own wrong. This finding of bad faith, the court

below did not attempt to overrule or to qualify ; and the only criticism the defendant has to make upon the master's report is that he should have reported that all the costs should have been paid by the plaintiffs, because his report vindicates the course of the defendant in every step that he has taken.

*Mr. Jas. Aylward Develin* (with him *Mr. Theodore D. Rand*), for the appellees :

1. The two agreements being separate and distinct, the breach of one cannot be set off in equity as a defence to the breach of the other, and the cross-bill was improperly brought and properly dismissed. It is unnecessary to cite authorities in support of the well-known rule that there can be no set-off in equity, and that a cross-bill must be confined to the subject matter of the original bill, and cannot introduce new matters not embraced in the original bill. In our case, the breach of the contract to furnish a drain-pipe is not the same wrong, nor the effect of the same wrong, as the breach of the agreement with respect to the windows in the party wall.

2. The specific prayer for relief in the defendant's cross-bill is for the restoration of the privy well. This remedy cannot be granted; and, if the specific relief prayed for is denied, then under the general prayer no relief can be granted entirely distinct from and independent of the general relief prayed : Adams' Eq., *309, n.; Thomas v. Ellmaker, 1 Pars. 115 ; Delaware Canal Co. v. Penna. Coal Co., 21 Pa. 146. The relief which the master recommended, to wit, the building of the drain-pipe and the payment of damages, was entirely different from the one prayed for, and therefore, under the above principle, such a decree would have been erroneous.

3. Moreover, by building a party wall, the defendant, ipso facto, abandoned his easement to the well. The two were inconsistent. The essential of a party wall is that it should be without openings : Vollmer's App., 61 Pa. 128. As there was no other way of ingress or egress to the said well than across the boundary of the two properties, by erecting the party wall the defendant abandoned the use of the well. When an easement is once abandoned, the right to it is destroyed : Washburn on Easements, 542.

Opinion of the Court.

OPINION, MR. JUSTICE WILLIAMS:

The parties to this litigation own contiguous lots near the corner of Fourth and Arch streets in the city of Philadelphia. The plaintiffs in the court below own Nos. 70 and 72 North Fourth street. The defendant's lot was No. 410 Arch street, which, extending beyond the corner lot owned by other parties, adjoined and formed the rear boundary of both the lots of the plaintiffs. On the backside of No. 70 there was a large privy well some thirty feet deep, and ten feet wide, to the use of which the defendant had a title which is not questioned, and to which he had access for himself and his tenants by means of an opening in the east wall of his building. Both parties were desirous to rebuild on their respective lots. Negotiations were had in regard to the privy well and the drainage for the new buildings, which resulted in an amicable arrangement by which Phillips was to surrender his right to the privy well, and permit the plaintiffs to fill it up and build over the ground. In exchange for the right thus relinquished, the plaintiffs were to provide Phillips with a suitable connection with the Fourth street sewer under the south side of their building. He was to build therefore a solid wall on his east line, with no opening in it, which the plaintiffs could use as a party wall in the erection of their block. This he did. The plan of the plaintiffs' building contemplated the use of this party wall for their first floor, and a shortening of the stories above the first, so as to leave a recess or open area between the party wall and the upper stories some ten or twelve feet wide. Into this area it was agreed that Phillips might open windows in the party wall. So long as they were kept open he was not to ask contribution towards the cost of the wall. If the plaintiffs wished the windows closed, they were to give Phillips one year's notice, and pay their share of the cost of the wall. This agreement was reduced to writing, at the instance of Phillips, and presented to the plaintiffs for execution. They made no objection to the contract as written, but delayed its execution until Phillips had completed his building, and then refused to sign it. They filled the well and built over it up to and against the party wall, but they refused or neglected to provide the sewer connection that was to take its place, and compelled Phillips to provide another connection with the sewer by a different route, and at a relatively large cost.

The master has found that the written contract correctly recited the agreement actually made; that Phillips surrendered his right to the well, and complied with the contract on his part in regard to the manner of building the party wall. He has also found the refusal of the plaintiffs to provide the promised sewer connection, and that Phillips has suffered injury in consequence, amounting to several hundreds of dollars. Upon this state of facts, the plaintiffs have come into a court of equity to ask that Phillips be compelled to close the windows opening into the area in accordance with his agreement to close them upon a year's notice.

The learned judge who sat as a chancellor in this case made the decree asked for, treating the several stipulations that made up the general arrangement between these parties as severable and independent in their character. Such of them as were for the benefit of Phillips, and were to be performed by the plaintiffs, he left for a court of law to enforce in an action for damages; but a stipulation which was found by the master to be part of the general arrangement, which was for the benefit of the plaintiffs, he enforced by a decree in equity. This we think was wrong. If the case presented was one for specific execution, the equities of both parties should have been protected. But we think the plaintiffs were in no position to ask equitable relief. They set out in their bill so much of the general arrangement as related to the windows in the party wall. The defendant replied, in substance, that the stipulation on which the bill rested was but a part of an agreement made before the work of rebuilding was begun; that under that agreement he had surrendered his right to a privy well on the plaintiff's ground, and erected a party wall with no opening in it on the first floor, against which the plaintiffs had built their new building; that, on the other hand, the plaintiffs had neglected and refused to keep the agreement on their part, and had neither provided him with a sewer connection, as promised, nor offered to make any substitute or compensation therefor. The report of the master showed the facts to be as alleged in the answer. The plaintiffs were thus found to be standing with both feet on their own broken promises asking a chancellor to compel Phillips to keep to the uttermost his promises towards them. But specific execution is not of right, but of grace; and he who seeks relief

Syllabus.

at the hands of a chancellor must show himself ready and willing to do all that he ought, in good conscience to do : Brightly's Eq., § 218. If he does not, his bill will be dismissed. If the contract is not fair, or the conduct of him who asks its enforcement is not just and conscionable, or if there are independent circumstances which will render the operation of a decree of specific execution harsh and inequitable, the parties will be left to their remedies at law : Brightly's Eq., § 220. Whether the stipulations in the contract are severable or not is not the important question in this case, but whether the position and conduct of the plaintiffs are such as to give them any standing in a court of equity. They had secured the surrender by Phillips of his rights on their land, and the erection of a wall with no openings on the first floor as a party wall, for which they had failed to make the promised return, and were still refusing to make any return whatever. Under such circumstances, they cannot be heard to ask equitable relief in regard to any part of the general arrangement. Having violated it themselves, in every important particular, they cannot ask its specific execution at the hands of a chancellor. They must do equity before they ask equity.

> The decree appealed from is now reversed and set aside, and the plaintiffs' bill is dismissed ; the costs in the court below and in this court to be paid by the appellees.

On November 10, 1890, a motion for a re-argument was refused.