## SYDNEY S. EASTON *vs.* J. B. LOCKHART.

### Opinion filed June 5, 1901.

**Specific Performance—Conditional Land Contract—Performance—Failure—Possession.**

Action for specific performance. Plaintiff, being desirous of purchasing a section of land belonging to the defendant, and not having the financial ability to do so, made a conditional agreement with D. as follows: D. agreed to loan plaintiff an amount sufficient to purchase the land, and, to secure said loan, would take a mortgage upon the land. This agreement was subject to the express condition that D. would not loan the money to plaintiff until certain attorneys employed by D. should examine the title, and after such examination advise D. that the title was satisfactory to them. Said attorneys, after making an examination, advised D. that the title was not satisfactory, and that the same was unmerchantable. The loan was thereupon refused, and has never been made. Pending the examination of the title, and before the attorneys had passed upon the same, the plaintiff and defendant entered into an oral agreement for the sale and purchase of the land as follows: Plaintiff agreed to purchase the land for $9,600 cash, and defendant agreed to sell the land for that amount and give good title; but it was expressly stipulated that the sale depended entirely upon the consummation of the loan from D., and it was clearly understood that the plaintiff could not and would not purchase the land unless he received the money from D. Upon this arrangement the defendant, who claimed to have a good title, permitted plaintiff to take possession of the land, and plaintiff took possession three days before the examination of the title was completed. Plaintiff broke the land and ditched it, and has ever since been engaged in cropping the land. The said improvements were valuable, but nearly all of them were made after the loan had been refused by D. Plaintiff by his complaint offered to pay into court the entire amount of the purchase price, to be kept by the court, and paid over to defendant upon his execution and delivery of a deed of warranty to plaintiff conveying a perfect title to the land. No part of the purchase money was ever paid into court. At the trial it appeared that plaintiff was financially unable to purchase the land from his own resources, and plaintiff omitted to show that he had entered into any binding agreement with any person for a loan with which to buy the land. The trial court adjudged that defendant should proceed to prosecute certain suits in equity in the circuit court of the United States and in the District Court for Cass county, with a view to the removal of certain clouds which the trial court found to exist upon the title to the land. The trial court further adjudged that, pending the determination of said suits to remove clouds upon the title, plaintiff should remain in the exclusive possession of the land, and so remain without paying the purchase money into court. *Held,* that the judgment of the court below must be reversed, for the following reasons: (a) Because the sale agreement, being conditional, and the condition never having been met, was an agreement which could not be specifically enforced in equity; (b) Because it was extremely inequitable to permit the plaintiff to remain in possession, without paying the purchase money into court, pending a litigation of indefinite duration and of uncertain result. To such a state of facts the maxim, "Who seeks equity must do equity," is clearly applicable.

**Case Remanded for Further Adjudication.**

> For peculiar reasons, set out at length in the opinion, the case is remanded to the trial court for the adjustment of certain rights growing out of plaintiff's possession and use of the land in controversy.

Appeal from District Court, Cass County; *Pollock, J.*

Suit by Sydney S. Easton against J. B. Lockhart to enforce specific performance of a contract for the sale of land. From a decree in favor of plaintiff, defendant appeals.

Reversed.

*Mills, Resser & Mills,* for appellant.

Plaintiff failed to show himself entitled to a specific performance. He has never tendered the payment of the purchase money which is a condition precedent to performance, § 5031, Rev. Codes; Waterman on Specific Performance, § 438. The contract between Mears and Percival is the foundation for any claim that can be made under either of the other instruments. That contract is of no binding force because too indefinite and uncertain to be enforced. *Hedderly* v. *Johnson,* 42 Minn. 443. It is void for want of mutuality. *Berwind* v. *Williams,* 33 At. Rep. 358. The written promise of a purchaser at an execution sale of real estate to reconvey to the execution defendant, on payment of a specified sum by a day named, the latter not binding himself to make such payment, is a mere gratuity and confers no vested interest. *Mers* v. *Insurance Co.,* 68 Mo. 127; *Bernett* v. *Bisco,* 4 Johns. 235; *Wall* v. *Printing Co.,* 48 N. Y. Supp. 67; *American Cotton Oil Co.* v. *Kirk,* 68 Fed. Rep. 791; *Stiles* v. *McClellan.* 6 Colo. 89; *Cool* v. *Cunningham,* 25 S. C. 136; *Rafolovitz* v. *Tobacco Co.,* 23 N. Y. Supp. 274. There was no consideration for the contract. § 3871, Rev. Codes. A consideration which is neither prejudicial to the promisee, nor beneficial to the promisor, is insufficient to support the terms made thereon. *Ford* v. *Crushaw,* 11 Ky. 68; *Marks* v. *Banks,* 8 Mo. 361; *Black* v. *Black,* 7 Ia. 46. The Mears-Percival contract was surrendered and cancelled by agreement of the parties. § 3937, Rev. Codes; Addison on Contracts, § 175; *Boyce* v. *McColloch,* 3 Watts & Sargent 430; *Gorman* v. *Salisbury,* 1 Vernon's Ch. 239; Bishop on Contracts, § § 815, 174; *Robinson* v. *Bullock,* 66 Ala. 548; *Flanders* v. *Fay,* 40 Vt. 316; *Cummings* v. *Aldrich,* 3 Metc. 486; *Forbes* v. *Smiley,* 56 Me. 174. Defendant can prove such surrender and cancellation in this action, if the evidence is clear and distinct and of such a character as to leave no reasonable doubt in the mind of the court. *Murray* v. *Harway,* 56 N. Y. 337; *Spencer* v. *Thompham,* 22 Beavans, 557; *Emery* v. *Grocock,* 6 Madd. 41; *Spring* v. *Sanford,* 7 Paige 550; *Smith* v. *Death,* 5 Madd. 371; *Shroer* v. *Shroer,* 86 N. Y. 575; *Jackson* v. *Murray,* 17 Am. Dec. 53; *Edwards* v. *Van Bibber,* 1 Leigh 183; *Hedderly* v. *Johnson,* 42 Minn. 443. The grant from E. Ashley to Clarence T. Mears is void for want of

sufficient description. It does not state in what state or county the land is located. *Cochran* v. *Utt,* 42 Ind. 267; *Murphy* v. *Hendricks,* 57 Ind. 593. Having informed Easton of the state of the title as to his contract and the judgments cancelling it, and offering him all the title defendant had, he, refusing to accept, cannot now bring suit to compel defendant to do anything more. *Mills* v. *Van Moorish,* 23 Barb. 125.

*C. E. Leslie* and *John Carmody,* for respondent.

A court of equity will not compel a purchaser to take doubtful title, or one which threatens litigation. *McCroskey* v. *Ladd,* 28 Pac. Rep. 216; *Townsend* v. *Goodfellow,* 41 N. W. Rep. 1056; *Michener* v. *Reinach,* 21 So. Rep. 552; *Daniel* v. *Shaw,* 44 N. E. Rep. 991; *Watts* v. *Waddle,* 6 Peters 391; *Jeffries* v. *Jeffries,* 117 Mass. 184; *Bowen* v. *Vickers,* 2 N. J. Eq. 520; *Vought* v. *Williams,* 24 N. E. Rep. 195; *Schriver* v. *Schriver,* 86 N. Y. 275; *Fleming* v. *Burnham,* 2 N. E. Rep. 905. A title open to a reasonable doubt is not a marketable one. *Wesley* v. *Eells,* 44 L. Ed. 810; *Adams* v. *Valentine,* 23 Fed. Rep. 1; *McPherson* v. *Smith,* 2 N. Y. Supp. 60; *Post* v. *Burnham,* 1 N. Y. Supp. 807; *Post* v. *Weill,* 11 N. Y. Supp. 807. A purchaser of immovable property cannot be judicially coerced to a doubtful title. *Beare* v. *Leonard,* 5 So. Rep. 257; *Irving* v. *Campbell,* 24 N. E. Rep. 821; *Holly* v. *Hirsch,* 43 N. E. Rep. 527; *Upton* v. *Maurice,* 34 S. W. Rep. 642; *Guild* v. *Ry. Co.,* 45 Pac. Rep. 82; *Aldrich* v. *Bailey,* 8 N. Y. Supp. 435; *McGrain* v. *Rundby,* 10 N. Y. Supp. 119; *Vaught* v. *Williams,* 24 N. E. Rep. 195; *Close* v. *Stuyvesant,* 24 N. E. Rep. 868; *Oakey* v. *Cook,* 7 At. Rep. 495; *Hickley* v. *Smith,* 51 N. Y. 21; *Walsh* v. *Barton,* 24 O. St. 28. It is the duty of the vendor to tender the vendee a safe title. *Lockhart* v. *Smith,* 16 So. Rep. 660; *Hero* v. *Block,* 11 So. Rep. 821; *Blanck* v. *Sadlier,* 47 N. W. Rep. 920; *Watson* v. *Coast,* 14 S. E. Rep. 249. Specific performance will not be decreed at the instance of the vendor unless his ability to make a good title is unquestionable, and in such case it is sufficient for defendant to show that the title is questioned. *Kellerman* v. *Building Co.,* 7 O. Dec. 408; *Bullard* v. *Butnell,* 49 N. Y. Supp. 666. It is not necessary to make a tender when the opposite party cannot or will not fulfill the terms upon which the money is to be paid. 22 A. & E. Enc. L. 1036; *Kerr* v. *Hammond,* 25 S. E. Rep. 337; *Tyler* v. *Plutzs,* 20 S. W. Rep. 256; *Veeder* v. *McMurry,* 70 Ia. 118; *Plummer* v. *Kelly,* 7 N. D. 88; *McPherson* v. *Fargo,* 74 N. W. Rep. 1057; *Brace* v. *Dolle,* 52 N. W. Rep. 586.

WALLIN, C. J. This is an equitable action brought to compel the specific performance of an alleged agreement to sell and convey a section of land which is described in the complaint, and situated in the county of Cass. The complaint alleges, in substance, that the plaintiff and the defendant entered into an agreement on May 28, 1898, whereby the plaintiff agreed to purchase, and de-

fendant agreed to sell, the land in question for the sum of $9,600, and that upon the payment of the purchase price the defendant agreed to execute and deliver to the plaintiff "a good and suffi-cient warranty deed to said premises, and was to furnish to the plaintiff said land free and clear of all incumbrances, and make the plaintiff a clear, good, valid, and merchantable title to all of said land; that at the date of entering into said agreement the land was wild land, and it was agreed that plaintiff should at once go into possession and improve the premises; that, pursuant to said agree-ment, plaintiff took immediate possession of the premises, and pro-ceeded to make valuable improvements thereon, and in so doing the plaintiff has broken and backset the entire tract, and has disc-har-rowed the same, and paid taxes thereon, and the said improvements are of great value. The plaintiff further alleges that he negotiated a loan with one A. L. Dalrymple for the entire purchase price of said land, with the understanding that such loan was to be secured by mortgage upon said premises, to be executed and delivered by the plaintiff to Dalrymple. The complaint further shows: "That after negotiating said loan, and after the plaintiff had entered into posses-sion of said land and had broken the same, and when the plaintiff was about to pay the money for said purchase price to the said de-fendant, and receive his deed of said land, it was discovered that the defendant's title to said land was imperfect, that adverse claims and interests in and to said land were held or claimed by various parties, and that the title to said land was not then perfect in the said defendant; and the said title has not yet, as plaintiff is in-formed and believes, been perfected, or attempted to be perfected, in the said defendant. That the plaintiff hereby offers to pay into court the entire purchase price of said land, to-wit, the sum of nine thousand six hundred dollars ($9,600), to be held by the court until the defendant shall perfect his title to said land, and deliver to the plaintiff a good and sufficient warranty deed of said premises, free and clear of all incumbrances and adverse claims." The relief demanded is, in effect, that plaintiff be required to perfect his title to the land, and then execute and deliver to plaintiff a good and valid deed of warranty for the same upon plaintiff's payment of the pur-chase money, and, if title cannot be perfected, that the plaintiff recover of defendant damages as follows: (1) The value of said improvements; (2) the difference between the price agreed to be paid for the land and the actual value thereof, which difference is alleged to be $6,400; (3) for plaintiff's costs and for further relief. Defendant, by his answer, admits that he agreed to sell the land to plaintiff at the time and for the price as stated in the complaint, and that it was agreed that plaintiff should take possession as al-leged in the complaint, and that plaintiff did take possession and break the land. The answer states "that the defendant has ever since the making of said contract been, and now is, ready and willing to perform his part of said contract to convey said land to the plain-

tiff by a good and sufficient warranty deed, and has frequently offered to perform said contract on his part, but the plaintiff has refused and neglected to perform said contract and to pay the purchase price in said contract, or any part thereof, and that ever since the making of said contract the defendant has had a good and sufficient title in fee simple to said premises, free and clear from all claims, demands, liens, or incumbrances whatsoever; and that the plaintiff at the time of making said contract, or prior thereto, was informed of the exact condition of defendant's title." Upon these allegations the parties went to trial before the court without a jury, and plaintiff recovered a judgment in the court below, from which defendant has appealed to this court, and a trial anew in this court is properly demanded.

The court below adjudged: First, that the defendant was not vested with a merchantable title to the land in suit; second, "that the defendant be required to perfect the title to said land within a reasonable time, by continuing at his own expense to final judgment the suit now pending in the circuit court of the United States for the District of North Dakota in which J. B. Lockhart is complainant and E. Ashley Mears and Clarence T. Mears are defendants, and by prosecuting in this court an action to remove the cloud on the title to said land caused by the following instruments, viz:" The judgment next proceeded to designate certain instruments as constituting clouds or incumbrances upon defendant's title, viz. a certain deed, mortgage, and contract. There are numerous other features of the judgment, which need not be set out, except that it was adjudged "that until such deed be given, or until such time as it is disclosed by the judgment of any court of competent jurisdiction that said title cannot be freed from all incumbrances and adverse interests, the plaintiff shall remain in possession of said land." The judgment clearly anticipates that the litigation to perfect title which the court directs to be instituted and carried on will be of some considerable duration, and to meet this situation the court directs as follows: "That on or before the 1st day of October, 1901, 1902, and 1903, if the matters here in dispute are not sooner settled, the plaintiff shall pay to the defendant in cash $672, the annual rental value of said land, which amount, in the event of a title being secured and transferred to plaintiff, shall be credited as a payment on the purchase price of said land; that, in the event of the inability of the defendant to pass the title to the plaintiff, he (the defendant) shall have judgment against the plaintiff for the sum of $672, the rental value of said property for the year 1899." There are other features of the judgment, including that for costs and disbursements, which need not be further mentioned.

An examination of the evidence and proceedings at the trial, as embraced in the record, discloses the fact that the chief contention of counsel in the case is, and has been, whether the defendant's title to the land in controversy was, when the agreement was made

and when the action was tried, a good, valid, fee-simple, and merchantable title. The plaintiff concentrated his testimony upon this branch of the case, and with such success that the trial court found that the defendant's title was not, when the agreement was made or at the time of the trial, a valid, merchantable title, and, upon such finding of fact, adjudged that the defendant should perfect his title by certain suits of an equitable nature to be prosecuted in the circuit court of the United States for the District of North Dakota and in the District Court for Cass county. In this court plaintiff's counsel places great stress upon this feature of the case, and cites authority in support of his contention that, the title having been shown to be not merchantable, a court of equity would necessarily refuse to enforce a specific performance of the contract until such time as the defendant had perfected his title. From the standpoint of this court, it will be unnecessary, for reasons hereafter to be stated, to determine whether the defendant's title was or is a merchantable title. It is undoubtedly well settled that a purchraser of land cannot be compelled to accept a deed and pay the price in a case where it appears that the vendor's title is so clouded by claims and demands that the same is not a marketable title. The cases are numerous sustaining this obviously just rule. In *Townshend* v. *Goodfellow*, (Minn.) cited with note in 3 L. R. A. 739 (s. c. 41 N. W. 1056), the court said: "Equity will not actively interfere to compel specific performance of a contract for the sale of land in favor of the vendor, if there is such uncertainty about the title as to affect its marketable value; and the court will not, in such case, compel its acceptance, and cast upon the purchaser the risk of litigation and the embarrassment of a questionable title." See *Spencer* v. *Sandusky*, (W. Va.) 33 S. E. 221; *McPherson* v. *Schade*, (N. Y. App.) 43 N. E. 527; *Vreeland* v. *Blauvelt*, 23 N. J. Eq. 485. But it is unnecessary to cite further adjudications in support of a rule which is entirely elementary. In this state the rule has been embodied in a provision of the Civil Code, which reads as follows: "An agreement for the sale of property cannot be specifically enforced in favor of a seller who cannot give to the buyer a title free from reasonable doubt." Section 5032, Rev. Codes 1899.

In our further discussion of the case we shall accept the plaintiff's version of the facts as disclosed by the evidence, and shall assume, without passing upon the point, that the defendant, when he entered into the sale agreement with the plaintiff, did not possess, and has not since acquired, a good, valid, and merchantable title to the land in question. Upon this assumption, it would follow that the defendant at no time has been in a position to invoke the powers of a court of equity to compel a specific performance of the agreement in his own favor. See authorities supra. But, to determine whether the plaintiff has ever been in a position to compel a specific performance, it becomes necessary to ascertain from the evidence exactly what the agreement was. In cases of this kind the precise terms of

the sale agreement are of capital importance. In the present action the court has no difficulty upon this feature of the record, because there is no dispute between the parties as to any feature of the sale agreement which is at all material. The agreement rests entirely in parol. No writing or memorandum embracing any of the terms of the agreement was ever made or signed by either of the parties. It appears that there were a number of conversations had by the parties in May, 1898, about a sale of the land. In most of these conversations only the plaintiff and the defendant were present, but in one of them the plaintiff's father was present, and took an active part in the negotiations. As to the terms of the agreement, plaintiff testified as follows: "I am the plaintiff in this action. I made a purchase of this land from Mr. Lockhart by verbal contract. It was closed by telegram. Exhibit A is the telegram. (Exhibit A offered in evidence, and received without objection.) The contract was not reduced to writing, except so far as it is contained in that telegram. I told Mr. Lockhart if he would give me a good and sufficient deed of the land, that I would pay him the price of it. I told him that I had to borrow the whole amount of money on the land from A. R. Dalrymple, and, if the title was not good, there was no use of talking about it. I told him I would give him $9,600 for the section of land, if he would give me a good title to it. I told him that I had to borrow the whole amount of the price, and it was necessary that the abstract should be correct. There was not any one spoken of in particular who should pass on the title. Afterwards I told him that Carmody & Leslie should examine the title. I told him to send his abstract to Carmody & Leslie to have it examined. That was some time in May, 1898,—last year. To Mr. Mills: It was before the telegram that we had this conversation. To the Court: We had the first conversation before the telegram. I told him to send the abstract to Carmody & Leslie at the time we first talked. To Mr. Leslie: There was a mortgage on the land. Mr. Lockhart had to see this man, the mortgagee, to see if he would accept his money, and he said, if he could get this man to take his money, that he would take $9,600 for the land, and that he would find out in a few days and let me know; if the man would accept his money, he would accept $9,600. I told him all right. I told him I was going to get the money from A. R. Dalrymple, and that I was going to borrow the money on the land, and the abstract would have to be good." The testimony of plaintiff's father as to the agreement is as follows: "(2) What was said? What was the contract? What was said between Mr. Easton and Mr. Lockhart? A. There was that Aylmer mortgage, there, and I think what was said by Mr. Lockhart was this: He said that he did not know whether Mr. Aylmer would take his money or not. And I says, 'Provided he will take his money, what will you discount it,—$15 an acre?' He says, I won't discount it anything;' and he says, 'I don't know whether I can get Mr. Aylmer to take his money or not.' I says, 'Mr. Lockhart, as I under-

stand, Sid will give you $9,600 cash for that piece of property, provided your title is all right;' and I says, 'The abstract has got to pass Mr. Carmody & Leslie and John Farrand. . If they accept the title of that land, you can get your money tomorrow, as soon as you can make your deeds out.' Mr. Lockhart understood that. He says, 'I will have to send down to see if Mr. Aylmer will take his money. If he will take his money I will consider it a sale.' I told Mr. Lockhart that Sid had borrowed this money to pay him, and that he had to have a good tittle to borrow the money; that, if he could not get a good title, he could not borrow the money. I don't know whether Sid told him the same thing or not. Sid was in the room at the time, and heard the conversation between Mr. Lockhart and I; and he was to send Mr. Hooper to see if Mr. Aylmer would take his money. If he did, Mr. Hooper was to telegraph to him at once, and he was to telegraph us at once, so he could go on and go to breaking, and he did."

Conceding to the plaintiff the full benefit of all of this testimony, it appears that the parties entered into a conditional agreement whereby the defendant agreed to sell the land, and give a good and valid title thereto to plaintiff, upon receiving the purchase money, provided that a certain party living in the east would consent to accept the amount due on a mortgage which he held, and which was then an incumbrance on the land, and defendant agreed to promptly ascertain and report if the mortgagee consented to accept his money. We also discover that the agreement on the part of the plaintiff was entirely conditional. He did not agree to purchase the land absolutely and at all events. His agreement was to buy the land, and pay the stipulated price down in cash, provided that he succeeded in obtaining the necessary funds from one A. R. Dalrymple, who had agreed provisionally to advance sufficient money as a loan to pay for the land, and take security therefor upon the land. But this agreement was subject to the vital proviso that Dalrymple should, after an investigation which was then on foot, and was being made by Dalrymple's attorneys, Messrs Carmody & Leslie, accept and pass the title as a valid, legal, and merchantable title, and such a title as the attorneys of Dalrymple would approve, and advise Dalrymple to accept as security for the desired loan. It may be well to pause here and consider whether the agreement as above stated, when concluded, was of a character which could have been specifically enforced by either party as soon as it was made. This question, obviously, must receive a negative answer. The defendant did not agree to sell unless he could procure a release of the mortgage, and until that was done the agreement was not enforceable as against the defendant. On the other hand, the agreement of the plaintiff was also wholly conditional, and the condition was not one within plaintiff's own control, but was entirely a matter within the discretion of another person, through whom alone the plaintiff hoped to obtain the funds with which to complete his purchase, according to the

plaintiff's evidence. Both parties to the bargain fully understood that the plaintiff's ability to consummate the purchase depended entirely upon Mr. Dalrymple's willingness to make the loan, and his willingness hinged upon the result of a pending investigation of the title. It is therefore quite clear that the plaintiff was not, when the negotiations ended, in a position to compel specific performance upon defendant's part. At that time the plaintiff was confessedly without the necessary funds to pay for the land, and at that time Mr. Dalrymple was causing an investigation to be made of the title; and, under the evidence quoted, all parties understood that the loan would depend upon the result of such examination. Upon this state of facts, argument is certainly not needed to show that no court could legitimately enforce a specific performance, as against the defendant, until the plaintiff had met the obligations upon his part, which could be done only by tendering to the plaintiff the amount of the purchase money. This he did not do at or prior to the commencement of this action, and has not since done so, either in whole or in part. The contract, not being written, is one not enforceable in a court of law; but plaintiff's contention is that, under the facts in this record, the agreement is taken out of the statute, and has become enforceable in a court of equity.

The evidence shows that the plaintiff entered upon the land about June 1, 1898, and between that date and the 12th day of July, 1898, broke the entire section. Plaintiff took possession within a few days after receiving a certain telegram signed by the defendant and addressed to plaintiff, which bears date May 28, 1898, and reads as follows: "Deal closed. Go ahead and break section seventeen,"—which section is the land in controversy. The record is replete with evidence that both parties have attached great importance to this telegraphic message, but this court is unable to see its bearing upon the contract of sale. It did give plaintiff permission to enter upon the land and begin the work of breaking, but it went no further. True, it declared in terms that the deal was "closed." Still, this statement, in the light of the evidence, is of little significance. Both parties knew that the message simply meant that the mortgagee had consented to accept his money, and that the message was sent to apprise the plaintiff of that event, and for no other purpose, except to convey to the plaintiff the fact that the defendant was willing that plaintiff should enter upon the land. When the message was sent, and when it was received, both parties necessarily knew that the deal was not "closed," and that the telegram neither closed it, nor referred to any event which could operate to close the deal. When the message was sent and received, the deed had not been delivered or tendered; nor had the purchase money been paid over or tendered; nor had Mr. Dalrymple in any wise indicated that he was satisfied with the title, which his attorneys were then investigating, and upon which they had at that time not finally reported. These facts, despite the optimistic language of the telegram, demonstrate that the

deal was not at that date closed, and that the message did not operate to close the deal, or help in doing so. Nor does the evidence in the record show or tend to show that the deal was ever closed, or that it ever went beyond the point already indicated, viz. beyond the point of an offer to buy and sell the land upon the terms and conditions already stated. The firm of Carmody & Leslie, to whom defendant had previously sent an abstract of the title for examination, concluded their investigation of the title as early as June 3, 1898; and on that day Mr. Leslie visited Fargo, and then had in his hands certain drafts and checks which had been furnished by Mr. Dalrymple, and which aggregated the amount of the purchase money. Mr. Dalrymple in furnishing these drafts and checks, instructed his attorneys to pay the same over to the defendant and accept his warranty deed of the land in question; but Mr. Leslie was expressly required to assume the responsibility of passing upon the title, and his instructions were imperative to the effect that he should not pay over the consideration or accept the deed unless the title, in his judgment, was good, valid, and merchantable. Mr. Leslie absolutely refused to pay over the money or accept the defendant's deed. He testified in the case, and the effect of his testimony is that the defendant's title was very far from perfect, and that the same was weighted down by certain instruments upon the records which constituted clouds upon the title. This view of Mr. Leslie was adhered to in the court below, and strenuously insisted upon in his brief on file in this court, and there is evidence in the record tending to support this contention. There is no claim made in plaintiff's behalf that the clouds which Mr. Leslie found or claimed to find upon the title have ever been removed, and there is no claim that Mr. Dalrymple has at any time since June 3, 1898, changed his mind about the condition of the title, and has offered to consummate the loan to the plaintiff. The evidence all points clearly in the opposite direction. In the light of the evidence, the only conclusion which this court has been able to reach upon this branch of the case is this: The conditions of the purchase and sale of the land, as prescribed and insisted upon by the plaintiff himself, have never been met. Plaintiff has not only wholly failed to tender the consideration to the defendant, but has likewise completely failed to secure the money provisionally promised to him by Mr. Dalrymple. Not having performed on his part, the plaintiff for this reason is in no position to enforce specific performance of an agreement which he has himself failed to make good. It appears, moreover, that at no time could the defendant have enforced specific performance. The agreement was such that no sale was to be made unless the title tendered by defendant should be such as would pass muster with Dalrymple. It clearly appears that defendant's title did not do so. Under such an agreement defendant had no standing whatever to demand specific performance, and he makes no such demand, despite the fact that he claims that his title is a good and valid fee-simple title. Nor would

the case be different if defendant's title were shown to be flawless. That would not be enough. It would, under the agreement, be necessary to satisfy every scruple of the attorneys of Mr. Dalrymple; and if they should refuse, for no valid reason, to accept and pass the title, the defendant would be remediless, under the terms of the agreement. Plaintiff did not agree to purchase, except upon the express condition that the loan should be first made and paid over to him by Dalrymple. Such an agreement could not be enforced in equity at any time prior to the actual consummation of the loan, and this in the case at bar is tantamount to saying that equity will not specifically enforce the agreement. The rule is well settled that where a contract, for any reason, is incapable of being enforced as against one party it cannot be enforced as against the other. See *Luse* v. *Deitz*, 46 Ia. 205. See, also, 22 Am. & Eng. Enc. Law (1st Ed.) p. 339, and note 2.

But, in our judgment, there is another cogent reason why specific performance in plaintiff's favor should not be granted. The complaint states that plaintiff "offers to pay into court the entire purchase price of said land, * * * to be held by the court until the defendant shall perfect his title to said land." This action was commenced on the 12th day of August, 1898, nearly three years ago, and as yet the promise of the complaint has never been performed. No part of the consideration has been paid into court, or offered to be paid. The evidence warrants the conclusion that the plaintiff is without the ability to pay the purchase money out of his own resources, and there is no evidence that plaintiff has ever made any definite agreement for a loan with any person, except that tentatively made with A. R. Dalrymple, as before stated. The evidence fully justified the trial court in making the following finding of fact: "That plaintiff has not paid any sum into court, nor is he able to do so without borrowing the same; and there is no evidence in the case that will warrant a finding that he is able to borrow the amount of the purchase price of said premises for the purpose of paying the same into court to abide the event of favorable action on plaintiff's part." The deposition of A. R. Dalrymple was taken and read at the trial. His testimony was to the effect that he had at all times been ready and able to advance the amount of the purchase money, and was willing to do so whenever Mr. Leslie would pass the title. He further testified that he had at all times a deposit in a bank sufficient in amount to purchase the land, but there is no evidence that any sum had ever been set apart or kept by him as a special deposit for this purpose. Nor has plaintiff ever deposited any part of the purchase money in any bank as a fund to be used in paying for the land. The plaintiff has been in the exclusive possession of the land since about June 1, 1898, and during the years 1899 and 1900, and up to the present time, has been cropping the land. Upon the oral argument in this court it was stated by counsel for the appellant that A. R. Dalrymple had departed this life, and the truth

of this statement was not challenged.  It therefore appears that the
only person who has ever agreed to furnish plaintiff with funds to
buy the land is no longer living; and the agreement which he made
is obviously not a continuing agreement, nor such as will bind his
heirs or legal representatives.    True, the plaintiff testified to the
effect that he would not have any difficulty in borrowing the money,
but he failed to show any binding agreement of any person to lend
him the necessary funds; and, as to his ability to borrow the pur-
chase money, the trial court very properly found that he did not
have such ability.    Upon such conditions the trial court decreed a
specific performance in plaintiff's favor, and directed that defendant
should proceed to perfect his title, and, to this end, decreed that de-
fendant should prosecute to determination a pending action in the
circuit court of the United States, and also institute an action in the
District Court for the county of Cass.    It is, of course, impossible
to forecast with certainty either the duration or the result of any
such litigation as that upon which the defendant has been directed
to embark; but that the same would be attended with the usual delays
incident to lawsuits is highly probable, and that the litigation will
be expensive to the defendant is practically certain.    Meanwhile the
trial court adjudged that the plaintiff should remain in the posses-
sion of the land, to the exclusion of the owner thereof.  But what are
to be the fruits of the proposed litigation?  Let us suppose that the
defendant will be successful in his lawsuits, and succeed in removing
every cloud from the title to his land.  What, then, are the defend-
ant's rights?  He certainly would then be entitled, in justice, to re-
ceive his purchase money on tendering his deed to the plaintiff.  But
what guaranty has the defendant that the purchase money will be
forthcoming?  None whatever.  All the evidence points to the ina-
bility of the plaintiff to pay the price, and nothing appears showing
that he can do so by a loan or otherwise.  The promise of the plain-
tiff to pay the money into court has not been kept.  Nor is this all.
The plaintiff has never at any time agreed absolutely and at all
events to buy the defendant's land.  His agreement was wholly con-
ditional, and events have demonstrated that the condition has not
been met, and cannot now be met at any time.  Hence, if the plaintiff
should now at any time see fit to refuse to perform the agreement on
his part, the defendant would be remediless.    Upon such a state of
facts, we can hardly conceive of anything more inequitable, than
would be a decision allowing the plaintiff to remain in possession
of the land pending the proposed litigation; and this without re-
quiring him to deposit the purchase price in court, to be paid to the
defendant upon a tender to plaintiff of a perfect title.  We have seen
that the contract was never such as could be enforced specifically;
but if it were an absolute contract of sale, and reduced to writing,
and complete in all its terms, a court of equity would not enforce
it specifically if its enforcement should be inequitable, or would op-
erate harshly as against the defendant  This rule is briefly expressed

in 3 Pom. Eq. Jur. p. 488, as follows: "The contract and the situation of the parties must be such that the remedy of specific performance will not be harsh or oppressive." See note 1, and cases cited. The maxim that he who seeks equity must do equity is as applicable to cases brought for specific performance as to other actions for equitable relief. In *Rushton* v. *Thompson,* (C. C.) 35 Fed. 635, Brewer, J., said: "Courts not merely observe the words of the contract, but also have respect to the obligations of the golden rule, and that, unless plaintiff has done as he would be done by, it is useless for him to come into that forum where equity and good conscience reign supreme over the letter of the law." See *Datz* v. *Phillips,* 137 Pa. 203, 20 Atl. 426, and *King* v. *Hamilton,* 4 Pet. 311, 7 L. Ed. 869. In the case last cited the court voiced the maxim in the following language: "Where a party comes into a court of chancery seeking equity, he is bound to do justice, and not ask the court to become the instrument of inequity." Further on the court say: "A party, to entitle himself to the aid of a court of chancery for the specific execution of a contract, should show himself ready and desirous to perform on his part." Under the facts as detailed in this opinion, and in the light of the established rules and maxims of equity, we have no hesitation in holding, and do hold, that the plaintiff in this action has no standing whatever in a court of equity, and that this action cannot be maintained for specific performance.

But this conclusion leads up to other complications which have crept into the case in the course of a protracted litigation. The record shows that at defendant's request a receiver was appointed, and has performed certain services as such, and that he has received certain compensation, a part of which has been advanced by the defendant, and that the receiver has been discharged. It further appears that since judgment was entered below, and prior to an appeal to this court, the plaintiffs upon an order made by the trial court and dated September 4, 1900, paid $1,000 into court, to remain as security for the payment of any judgment that may finally. be recovered against plaintiff in this action. The record further shows that the trial court, upon evidence offered in the case, ascertained the value of the plowing and ditching on the land as done by the plaintiff, and further found the annual rental value of the land. In view of these consideration, and the further fact that the plaintiff at the present time is cultivating a crop of grain now growing upon the premises, we have concluded that principles of justice, as well as the interests of the suitors, will be best subserved by retaining jurisdiction in equity to adjust the rights of the parties in the present action; and we think the court below, under all the surroundings of the case, should retain jurisdiction for this purpose. It is doubtful, perhaps, under strict principles applying to this class of cases, whether the plaintiff would be in a position to demand that the case should be retained in a court of equity for the purpose of

adjusting mere legal rights and enforcing mere legal remedies. Upon this point, see 3 Pom. Eq. Jur. § 1410, and note 1. Possibly this action was instituted in good faith by the plaintiff, but the fact remains that plaintiff was fully advised of all defects in the defendant's title long before the suit was started, and since its institution it is certain that plaintiff has manifested no disposition to perform equitable obligations resting upon him. The attitude of the plaintiff has been, from the first, to remain in possession, and enjoy rents, issues, and profits, without incurring any obligations, and without paying the purchase price into court. Let it be conceded that plaintiff took possession in good faith, and with no knowledge of the clouds upon defendant's title, and that, prior to receiveing any notice of defects in title, plaintiff did a few days' work (not exceeding three or four) in the way of breaking the land. For this work the law would give a full measure of redress,—not because the contract was valid at law, for it was not, but upon other grounds. See *Day* v. *Railroad Co.,* 51 N. Y. 583; *Fleckton* v. *Spicer,* (Minn.) 65 N. W. 926. But the court below will be in a better position than this court to adjust what remains to be adjusted as between the parties. We therefore shall direct as follows: First, that the trial court shall at once enter an order reversing the judgment already entered in the action; second, that in any final judgment hereafter entered in this action the defendant shall recover his costs and disbursements in both courts. It will be so ordered. All the judges concurring.